# WHEELING.

LOVETT *v.* WEST VA. CENTRAL GAS CO.

Submitted June 10, 1908.   Decided June 11, 1909.

1. EMINENT DOMAIN—*Payment Before Taking—What Constitutes "Taking."*

   The laying of pipe lines by a gas company in the soil of lands, without the consent of the landowner or appropriation in the manner provided by law. is a taking of the lands within the meaning of the constitutional provision forbidding the taking or

740          LOVETT *v.* GAS COMPANY.          [June 1909.

damaging of private property for public uses before payment of just compensation therefor. (p. 742.)

2. SAME.

The impairment of the utility of one's property by the direct invasion of his private domain is a taking of his property, within the constitutional meaning, though the owner has not less of material things than he had before. (p. 743.)

3. SAME—*Payment Before Taking—Injunction.*

An injunction lies to prevent the taking of one's private domain, for uses of the public, contrary to the constitutional mandate, regardless of any question of damages. (p. 743.)

4. SAME.

A question of right, and not one of damages, is raised upon an application for an injunction to prevent the taking of private property for public uses contrary to the Constitution and laws. (p. 744.)

5. SAME—*Right to Change Locations Condemned.*

A corporation having the right of condemnation, and selecting locations upon which it exerts that right, cannot thereafter depart from the bounds of the lands condemned and voluntarily take other locations on the lands of the owner in the place of those condemned. No such exchange can be made without the landowner's consent, no matter how essential, convenient, or uninjurious it may be. (p. 745.)

6. SAME—*Necessity of Payment Before Taking.*

The right of an individual to the use and enjoyment of his lands can in no wise be made to give way to public uses and convenience, except in obedience to the constitutional provision forbidding the taking of private property for such uses before payment of just compensation. (p. 747.)

7. SAME—*Injunction—Equitable Estoppel—Failure to Act.*

A landowner, through whose lands locations have been condemned for the purpose of laying pipe lines to serve the public with natural gas, is not prevented from enjoining the use of other locations on his lands than those condemned because he failed to stand by and object at the time the pipe lines were laid. It is not the duty of the landowner to see that the proper locations are used; but it is the duty of the condemnor to use only the lands legally taken. (p. 748.)

8. INJUNCTION—*Mandatory Injunction.*

Where a defendant, having been restrained from the violation of plaintiff's clearly established rights, has begun the violation with knowledge of such rights, a mandatory decree compelling the restoration of the plaintiff to his original situation may be obtained. (p. 748.)

65 W. Va.

Appeal from Circuit Court, Lewis County.

Bill for an injunction by James B. Lovett against the West Virginia Central Gas Company. Decree for complainant, and the Gas Company appeals.

*Affirmed.*

W. W. BRANNON and G. M. FLEMING, for appellant.

W. G. BENNETT and BLAND & BRANNON, for appellee.

ROBINSON, JUDGE:

The West Virginia Central Gas Company, by proceedings in the circuit court of Lewis county, condemned for public purposes strips of land eighteen inches wide through two tracts belonging to James B. Lovett. These strips of land, one through each tract, were condemned by specific descriptions, setting forth the beginning points, and the courses and distances of each strip. In the condemnation proceedings it was ascertained that the landowner was entitled to the sum of $806.40 for the land so taken. The money was paid into court, and an order was made giving the gas company immediate possession of the land. The company, however, excepted to the amount of compensation found by the commissioners. The proceedings were continued for the ascertainment by a jury of the value of the lands taken.

Although the strips of land were condemned by definite descriptions furnished by the gas company, that company did not confine itself to the lands described when it proceeded to lay its pipes. Instead of pursuing the direct courses and distances called for in the descriptions upon which the condemnation was had, the pipe lines were laid on somewhat irregular courses and on portions of Lovett's lands that the company had not condemned for that purpose. On one of the tracts the line was laid at irregular distances from the strip condemned; in some places as far away as eight and twelve feet. On the other tract the pipe line varied from the strip condemned as much as five feet and eight inches. Thus the gas company took possession of and laid its pipe lines on lands of Lovett that it had not condemned. It had paid no compensation for the lands so occupied. Lovett, thereupon, instituted his suit in equity, praying an injunction against such unlawful taking and appropri-

ation of lands belonging to him. He sought to enjoin the gas company from using the pipe lines on his lands which it had not taken by condemnation, and from maintaining, re-placing, or operating the same; and he prayed that by mandatory injunction the gas company be required to remove the pipe lines so placed. The gas company answered denying that, in laying the pipe lines, it had departed from the strips condemned by it. It seems to have rested its case upon averment of the fact that the pipe lines were laid actually upon the strips condemned. Many affidavits were filed by each party. It was agreed that the cause be submitted and heard upon these affidavits in lieu of depositions. Upon the hearing, the injunction against maintaining, re-placing, or operating the pipe lines as laid was awarded. The mandatory injunction prayed for was also granted. Thirty days were given for the removal of the pipe lines. The gas company has appealed from the decree.

It is clearly established that the pipe lines were not laid on the strips of land condemned. Counsel for the gas company, in their brief, practically concede this fact. They insist, however, that Lovett has no redress by way of injunction; that his remedy, if any he has, is at law; that the wrong sought to be restrained is a mere technical one; that the use of lands other than those condemned has not injured Lovett, but, in fact, benefitted him; that he is estopped because he did not object to the laying of the pipes before the work was completed; and that it is an unreasonable and unnecessary hardship, working injury to the public, to require the removal of the pipe lines.

It is the sacred and fundamental law of this commonwealth that private property shall not be taken or damaged for public use without just compensation therefor. The gas company has taken lands of Lovett which it did not condemn and for which it did not compensate him. Since he chooses to complain, the facts that the parcels of land used lie very near those condemned and that the use of them injures him no more than would the use of the lands actually condemned do not change the mandate that his property cannot be taken for public use except in the manner provided by law. It may be that the taking of the property is not a great injury; yet, it is a taking. The landowner objects to the use of any other land than that legally taken. He has the right so to object. His motives in object-

ing, whatever they may be, cannot change the legal principles involved. He is entitled to be protected as to that which is his, without regard to its money value. For some reason, the gas company has not seen fit to lay its pipes on the lands which it selected and condemned, and for which it paid. Whether this departure from the bounds that it had legally taken was by mistake or otherwise does not appear, nor does it concern us. It is the gas company's fault that it has not occupied the lands which it had the legal right to occupy. That which belongs to Lovett cannot be taken from him by the mere choice of the gas company. It can only be taken legally. If it be true that no great value is involved, yet sure it is that a right belonging to Lovett is involved. As the case is presented, there is no controversy as to this right in him. His title to the lands is, indeed, conceded.

By the gas company's laying the pipe lines on lands not condemned for the purpose there has been a visible and tangible appropriation of the same. More than a mere consequential injury has occurred by that unlawful act. The lands have been taken. "Any invasion of property, * * * either upon, above or below the surface, and whether temporary or permanent, is a taking: as by constructing a ditch through it, passing under it by a tunnel, laying gas, water or sewer pipes in the soil, or extending structures over it, as a bridge or telephone wire." 1 Lewis on Eminent Domain, § 149. Indeed, the impairment of the utility of one's property by the direct invasion of the bounds of his private dominion is a taking of his property, in the sense of the Constitution wherein it prohibits the taking of private property for public use until just compensation is paid therefor, though the owner has not less of material things than he had before. Property is taken, within the constitutional meaning, where it is materially impaired by something more than mere consequential injury, and which impairment renders it impossible for the owner to enjoy his property to the full extent to which he is entitled. *Smith* v. *City of Atlanta,* 92 Ga. 119; *Pumpelly* v. *Green Bay Co.,* 13 Wal. 166. The laying of pipe lines on Lovett's lands was clearly an invasion of his private domain, impairing its usefulness to him and rendering impossible his enjoyment of it to the full extent to which he was entitled. Gas pipes in soil belonging to him would ren-

der it impossible for him to enjoy that soil as fully and easily as if they were not there. In that soil he is entitled to dig for wells, to excavate for buildings. He is entitled to devote that soil to any purpose which he may see fit without the least interference by the pipe lines of one having no rights therein.

To prevent unlawful invasion of one's private domain for uses of the public, contrary to the mandate of the Constitution, an injunction lies. *Spencer* v. *Railroad Co.*, 23 W. Va. 406; *Jackson* v. *Big Sandy, etc. R. Co.*, 63 W. Va. 18; and other cases. That remedy secures the possession and use of the property until compensation is paid. Thus, the mandate of the Constitution is enforced. At law there is no such adequate remedy. No legal remedy will prevent the taking of private property for public use until compensation is paid. Equity only gives a complete remedy in such instances. "It is most essential to the preservation of the rights of private property, to the protection of the citizen, and to the preservation of the best interests of the community, that all who are invested with the right of eminent domain, with the extraordinary power of depriving persons, natural or artificial, without their consent, of their property, and its possession and enjoyment, should be kept in strict line of the authority with which they are clothed and compelled to implicit obedience to the mandates of the Constitution. A court of equity will intervene to keep them within the line of authority, and to compel obedience to the Constitution, because of the necessity that they should be kept within control, and in subjection to the law, rather than upon the theory that they are trespassers, or that the injury which they are inflicting is irreparable. The owner of the land has the right to say that, unless they keep within the strict limits prescribed by law, they shall not disturb him in the possession and enjoyment of his property. The power is so capable of abuse, and those who are invested with it are often so prone to its arbitrary and oppressive exercise, that a court of equity, without inquiring whether there is irreparable injury, or injury not susceptible of adequate redress by legal remedies, will intervene for the protection of the owner." *East & West R. R. Co.* v. *Tenn. Va. & Ga. R. R. Co.*, 75 Ala. 275; 2 Lewis on Eminent Domain, § 632.

Notwithstanding Lovett's clear right to stop the invasion of his property by injunction, it is insisted that the bill should

have been dismissed because it does not appear that the lands occupied by the pipe lines were more valuable than those condemned. But a question of right is involved and not a question of value. The following expressions from leading cases are applicable in this particular. "The building by a city of a sewer through a private lot necessarily takes and appropriates a portion of the property for the use of the public, and the same must be paid for, notwithstanding the fact that the market value of the lot may not be diminished by the building of the sewer." *Smith* v. *City of Atlanta, supra.* "The acts of the defendant are in derogation of the plaintiff's title and, being calculated to injure her in that respect, would sustain an injunction, although no damage had actually happened." *De Wilt* v. *Van Schoyk,* 110 N. Y. 7 (6 Am. St. Rep. 342). "No question of damage is raised upon application for injunction when railway companies or individuals exceed their statutory powers in dealing with other people's property, but simply a question of the invasion of a right." *Commonwealth* v. *Pitts. & Conn. R. R. Co.,* 24 Pa. St. 159 (62 Am. Dec. 372).

A company having the right of condemnation, and selecting property upon which it exerts that right, cannot thereafter of its own accord depart from the survey of the property condemned and take other property of the owner in the place of that which it has condemned. The fact that it has condemned one parcel of property of the landowner does not give it the right to take another. It cannot make such exchange of properties without the consent of the owner. "In opening or improving a highway or turnpike, or in constructing a railroad or ditch, or mill dam, no deviation can be made from the location as established by the proceedings or defined by the contract." 2 Lewis on Eminent Domain, § 599. In this connection, we refer to *Lance's Appeal,* 55 Pa. St. 27, in which case Thompson, J., said: "The one party being irrevocably bound by a location which takes a portion of his property from him, the rule would be unjust which would permit the other to act in regard to it as he pleases. If the latter desires a different road than that which he has got, let him apply anew to the proper source of power for authority to make it. He will not get it otherwise." In *Kier* v. *Boyd,* 60 Pa. St. 33, where land was appropriated by legal proceedings and a lateral railroad constructed on

it, the court held that the owner of the road could not encroach on the adjoining land on the pretext that it was necessary to widen the road-bed. It was there plainly announced: "If the ground appropriated by law is not sufficient for the necessities of the road; additional ground must be acquired by proceedings according to law." It was held in *Kern* v. *Isgrigg,* 132 Ind. 4: "Where the board of county commissioners appointed viewers and laid out and established a highway on a section line in a certain township, and the supervisors of certain road districts in said township were mandated to open up said highway on said section line, but disregarding said mandate, they proceeded to open up said highway on a different line, and for that purpose were endeavoring to wrongfully take possession of a portion of the appellee's real estate, and to permanently deprive him of the same, the latter may enjoin them from so doing." And Lord Eldon, in *Agar* v. *Regents Canal Co.,* Cooper's Chancery 77, said: "It is quite clear that the defendants had a right to carry their canal through some part of the plaintiff's estate, but must adhere to the line prescribed by the Act of Parliament and the plan deposited in the office of the clerk of the peace." Many cases are to be found of similar import. The authorities are all in accord that in occupying the property there can be no substantial deviation from the survey by which it was condemned. In the case under consideration, there was even more than a substantial deviation from the survey; there was a total variance from it. No case is found which would justify such a departure from the property condemned as the gas company, in this case, seeks to excuse. Nor can we in reason uphold a claim that one description of property may be condemned and a different one, though it be near and similar in character, be taken and occupied. Such principle would readily lead to injustice.

Quite pertinent to this case is the decision in *Rutledge* v. *Drainage Com. Dist. No. 6,* 16 Ill. App. 655. It completely answers the contention made here, that the departure from the lands actually condemned is justifiable. There, the court holds: "Where proceedings under the drainage law are had to appropriate property upon a certain line, the line so specified must be followed. If a substantially different line is adopted there must be another assessment, and it will not answer the purpose to say

that it is not more injurious to the land than the first line, and therefore no new proceeding is necessary. As the line in this case was a substantial variation from the line indicated by the plat, the injunction should have been granted."

It is sought to justify the act of the gas company upon the ground of convenience. Some trees and a stump made it necessary to take other property than that condemned, it is claimed. The answer to this is that such other property should have been condemned in the first instance. In *Hughes* v. *Trustees of Morden College,* 1 Ves. Sr. 188, where the commissioners of a turnpike having taken gravel from land immediately adjoining a highway under construction were enjoined from so doing, the Lord Chancellor said: "Its being in a country where it is difficult to get gravel, is not a circumstance that will extend the authority of the commissioners." And a decision applicable here, though not of a court of last resort, we quote approvingly: "A water company which has once exercised its right of eminent domain in the location of pipe lines will be enjoined from laying out over the same lands an entirely new and additional route for supplying itself with water, no matter how convenient or necessary the same may be." *McKay* v. *Penna. Water Co.,* 6 Pa. Dist. Rep. 364.

It is insisted that the removal of the pipe lines will, for a time, take from the public in various cities and towns the use of gas; that a removal of the lines will be a great hardship upon the company and its patrons, the public. But Lovett's rights to the undisturbed use of his property is as fixed and as sacred as are the rights of the public. If the gas company is inconvenienced or disturbed in the fulfillment of its contracts with its patrons, it has no one to blame but itself. It should have laid its pipe lines on the lands which it condemned. There is no reason why Lovett should suffer because of its neglect in this particular. Nor is there any law by which Lovett's rights must give way to the public rights, except under the constitutional provision which has not been observed as to the property taken. However, no inconvenience to the public need transpire since the decree provides for a period of thirty days in which to remove the pipes. In this time new pipe lines can be laid on the lands that were condemned, the gas turned into them, and

then the old ones taken from the property where they should not have been placed.

It was not Lovett's duty to see that the pipe lines were laid on the lands which were condemned for that purpose; but it was clearly the duty of the gas company to lay them there. He cannot be made responsible for the company's neglect of its duty to him, at the sacrifice of private rights. It would be manifestly unreasonable and unjust so to hold. There is nothing in the case showing that he knew that the company in laying the pipes was departing from the lands condemned. We cannot assume that he stood by and knowingly permitted the trespass. We must in reason assume that he relied upon the fulfillment of the gas company's duty to follow the survey under which it had taken the lands. A prudent man would naturally so rely. No bad faith on Lovett's part is established, denying to him protection by injunction. By remaining away while the work of laying the pipes was going on, he is not estopped to complain of the wrong location; for it was in nowise his duty to be present and compel adherence to the survey. The company had selected lands and taken them by law; it was bound to confine itself to such lands. It departed from them at its own risk. There is no element of estoppel in the act of Lovett in failing to ascertain that the company was not on its proper territory while the work was progressing. *Water Co.* v. *Browning,* 53 W. Va. 436.

The granting of the mandatory injunction is not erroneous: So clearly is Lovett entitled to his right to enjoy the lands which the gas company has sought to wrest from him without warrant of law, that the court should with great propriety compel the restoration to him of that which was wrongly, in direct disregard of constitutional right, taken from him. "Where a defendant is restrained from a threatened violation of plaintiff's clearly established rights and has begun the violation with knowledge of such rights, a mandatory clause will sometimes be added requiring defendant to restore plaintiff to the original situation." 1 Joyce on Inj., § 102.

It appearing that the decree is a manifestly proper one, an order will be made affirming it.

*Affirmed.*