# CHARLESTON

FRUTH *et als.*, TRUSTEES, ETC. v. BOARD OF AFFAIRS.

Submitted December 21, 1914.   Decided January 5, 1915.

1. EMINENT DOMAIN—*Compensation—Taking "Property."*
   "Property" within the meaning of our Constitution against the taking or damaging of private property without just compensation

paid or secured to be paid comprehends not only the thing possessed, but the right also to use and enjoy it, and every part of it, and in the case of real estate to the full limits of the boundary thereof.   (p. 459).

2.  SAME—*Taking Property—Compensation—Municipal Corporations—*
    *"Taking Private Property."*

     Wherefore anything done by a state or its delegated agent, as a municipality, which substantially interferes with the beneficial use of land, depriving the owner of lawful dominion over it or any part of it, and not within the general police power of the state, is the taking or damaging of private property without compensation inhibited by the Constitution.   (p. 460).

3.  MUNICIPAL CORPORATIONS—*Streets—Boundaries—Validity of Ordinance.*

     An ordinance of a municipal corporation ordained pursuant to a provision of its charter authorizing it, establishing a building line on a certain street and inhibiting abutting owners from encroaching thereon, based on merely aesthetic considerations, is not within the police power, and is unenforceable as a police regulation.   (p. 461).

4.  CONSTITUTIONAL LAW—*Determination of Constitutional Question—*
    *Pleading and Proof.*

     Whether by proper proceeding such statute and ordinance might be upheld and enforced under the power of eminent domain is a subject discussed but not decided because not presented by the pleadings and proofs in this case.   (p.466).

Mandamus by Val Fruth and others against Board of Affairs of the City of Charleston and others.

*Peremptory writ awarded.*

*Linn & Byrne,* for petitioners. ·

*A. S. Alexander, E. B. Dyer,* and *Morgan Owen,* for respondents.

MILLER, PRESIDENT:

Mandamus to require the Board of Affairs of the City of Charleston to grant to relators, Trustees of St. Paul's Evangelical Lutheran Church, a permit to construct a church edifice upon their lot at the intersection of Lee Street with Beauregard Street in said city, and having a frontage of 110 feet on each of said streets.

The alternative writ avers that on December 4, 1914, rela-

tors, in conformity with the requirements of the ordinances of said city, made formal application to the Building Inspector of said city for such permit, and was informed by him, that he would recommend to said Board of Affairs that said permit be rejected; and that on December 7, 1914, they appeared at a regular meeting of said Board of Affairs, and requested such permit, but that upon the report of said Building Inspector that the said church edifice as proposed to be erected upon said lot would extend over the building line on Lee Street, as established by ordinance adopted on March 19, 1909, and that it would be impossible to construct said edifice on said lot as proposed without encroaching on said building line, said permit, by order entered of record, was rejected, and relators denied the right to so erect their said church building, upon the sole and only ground that the same would encroach upon the building line purporting to have been so established by said city.

The alternative writ further avers that the lot of relators is wholly outside of any prescribed fire limits, and that the proposed structure does not and will not in any way conflict with any ordinance or regulation of said city concerning the safety, the health, the morals, or the good order of or among the citizens or inhabitants of said city, and that the refusal of defendants to award said building permit rests solely on the question whether the council of said city has the right to prescribe and the Board of Affairs the right to enforce the aforesaid ordinance establishing a building line twenty-five feet from the property line of said Lee Street, and to deny relators the right to occupy their lot with said structure within the said limits.

To so deny relators' right to erect said structure, as proposed, the writ further avers, would be to deprive them of their property without due process of law, and without compensation therefor, paid or secured to be paid, and contrary to sections 9 and 10, of Article 3, of the Constitution.

Defendants appeared and demurred to and moved to quash the alternative writ, and made no other or further return thereto. So the case stands upon the sufficiency of the averments of the alternative writ.

Legislative authority to pass the ordinance in question is

referred to section 8, of chapter 3, Acts 1907, the charter act of said city, defining its rights and powers, and purporting to give it authority, among other things, "to provide for the regular building of houses or other structures, and to determine the distance that they shall be built from any street or alley."

So there can be no doubt that the Legislature, at least, made attempt to confer on said city power to establish building lines along its streets and alleys. Neither the charter provision nor the ordinance in question passed in pursuance thereof, attempting to establish said building line, make any provision for condemning the property abutting on the street, nor for making compensation to the owner for the burden imposed upon his property for the public benefit.

Whether the charter or ordinance should so provide we think we need not determine, nor need we hold, according to our views of this case, that without such provision for condemnation and compensation, the charter or ordinance is void on constitutional grounds. Possibly the charter and ordinance might be construed as implying the power to condemn and to compensate for property taken or damaged by the lawful establishment of such building lines. In some states, in Missouri, for example, it is held that a law of this kind, making no provision for compensation to the owner, is void as being in contravention of the Constitution against the taking or damaging of private property for public purposes without just compensation. *St. Louis* v. *Hill,* 116 Mo. 527.

Two propositions of law are mainly relied on by defendants as justifying denial of the peremptory writ: First, that the establishment of a building line, for mere aesthetic purposes, is not a taking or damaging of private property for public purposes, within the meaning of the Constitution. Second, that whatever be the nature of the act, it is clearly within the police power of the State, delegated to the municipality, and for which no compensation, as for property taken or damaged, can be demanded, and that when so taken or damaged, the injury is *damnum absque injuria.*

On the first proposition, what is included within the word "property", as employed in the Constitution? Does it mean

the mere abstract thing, the thing possessed, in this case
the land embraced in the boundary of the lot? We think not.
Literally taken the word is sometimes said to be *nomen gen-
eralissimum,* but it is not always so used. Generally, and
particularly in an organic law, it comprehends not only the
thing possessed, but the right also to use and enjoy it, and
every part of it, and in the case of real estate to the full
limits of the boundary thereof. 3 Bouvier's Law Dict.
(Rawle's 3rd Revision) 2750; *Wells Fargo & Co.* v. *Mayor,
etc.,* 207 Fed. Rep. 871, (syl. 4). "Things real are such
as are permanent, fixed, and immovable, as lands, and rights
issuing out of, or connected with lands." 2 Minor Inst. 4,
citing 2 Bl. Com. 15. In short, land, property, includes
everything above and below it, *ab solo usque ad coelum.* 2
Minor Inst. 4, and 2 Bl. Com. 17. As defined in *St. Louis*
v. *Hill, supra,* property "is the exclusive right of any person
to freely use, enjoy and dispose of any determinate object
whether real or personal." Citing 1 Bl. Com. 138; 2 Aus-
tin's Jur. 817, 818; 19 Am. & Eng. Ency. Law, 248; Lewis
on Em. Dom., sections 57, 58, and 59. And in the same case
it is said: "Property, then, in a determinate object, is com-
posed of certain constituent elements, to-wit: The unre-
stricted right to use, enjoyment and disposal, of that object."
And by our statute, section 17, chapter 13, serial section 346,
fifteenth paragraph, Code 1913, "The word 'land' or 'lands'
and the words 'real estate' or 'real property' include lands,
tenements and hereditaments, and all rights thereto and inter-
ests therein except chattel interests." And by the seventeenth
paragraph thereof, "The word 'property' or 'estate' embraces
both real and personal estate." See, also, the general dis-
cussion of Judge BRANNON, on the definitions of "property"
and the right given by the Constitution to "tax all property,
real and personal" in *Coal & Coke Co.* v. *Tax Commissioner,*
59 W. Va. 605, 608, et seq.

Upon principle, therefore, as well as upon authority, we
hold that anything done by a state or its delegated agent,
as a municipality, which substantially interferes with the
beneficial use and ownership of land, depriving the owner of
his lawful dominion over it or any part of it, not within
the general police power of the state, as commonly under-

stood, is a taking or damaging of the property without com-- pensation within the meaning of our Constitution, and in- hibited thereby.

Now on the second proposition: Can the charter authority to establish a property line, as attempted by the ordinance in question, be sustained under the police power of the state? The demurrer to the alternative writ concedes the fact alleged that relators' lot is not within any of the fire limits established by the municipality; and it is alleged and not denied, but in so far as well pleaded, admitted by the demurrer, that the proposed structure does not and will not conflict with any ordinance or regulation of the city covering the safety, the health, the morals, or the good order among the citizens and inhabitants thereof.

It is conceded by relators that an ordinance clearly regu- lative, and within the police powers of the state, and within delegated powers of the municipality, would be valid, but it is insisted that the ordinance in question does not fall with- in that category. Stated in its most comprehensive terms by the highest court of our country this power extends not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity. *Eubank* v. *City of Richmond*, 226 U. S. 137, 142, citing *C. B. & Q. Ry. Co.* v. *Drainage Com'rs.* 200 U. S. 561. And in the same connection it is said, on the authority of another case, that: "It is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." *District of Columbia* v. *Brooke*, 214 U. S. 138, 149. But the court held in the principal case, reversing the supreme court of Virginia, that an ordinance of the City of Richmond, based on a pro- vision of its charter act, very similar to that of the City of Charleston, and tested by the extreme limits of the power, namely, the public convenience and general prosperity, which required the street committee on request in writ- ing of the owners of two thirds of the property abutting on any street to establish a building line on the side of the square on which their property fronts to be not less than five feet nor more than thirty feet from the street line, was an unreasonable exercise of the police power, in as much as

it authorized one set of property owners to control the property rights of others, and therefore void. The court did not think it necessary to consider and did not decide the power of the city to establish a building line or regulate the structure or height of buildings, and with reference to the cases cited for this proposition said: "The ordinances or statutes which were passed on had more general foundation and a more general purpose, whether exercises of the police power or that of eminent domain." And concluding said the court: "Nor need we consider the cases which distinguish between the esthetic and the material effect of regulations the consideration of which occupies some space in the argument and in the reasoning of the cases."

The Virginia court had held that the power delegated and sought to be exercised by the ordinance was in good faith and a valid exercise of the police power, and "in the interest of the health, safety, comfort, or convenience of the public, and for the benefit of the property owners generally who are affected by its provisions; and that the enactment tends to accomplish all, or at least some, of these objects." The supreme court of the United States, in reply, said, that by this ordinance "One set of owners determine not only the extent of use but the kind of use which another set of owners make of their property. In what way is the public safety, convenience or welfare served by conferring such power?"

In *Welch* v. *Swasey,* 193 Mass. 364, 372, a case involving the power of Boston, under its charter, to regulate the height of buildings, and to divide the city into districts for that purpose, and to prescribe different rules therefor in the several districts, all in the interest of the safety of the people, the court said of the police power invoked: "In the exercise of the police power the Legislature may regulate and limit personal rights and rights of property in the interest of the public health, public morals and public safety. *Commonwealth* v. *Pear,* 183 Mass. 242. *Commonwealth* v. *Strauss,* 191 Mass. 545. *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306, 318. With considerable strictness of definition, the general welfare may be made a ground, with others, for interference with rights of property, in the exercise of the police power. *Commonwealth* v. *Strauss, ubi supra.*"

We have examined all the judicial decisions cited by the Virginia court for its conclusion in the Eubank's case. With but one exception, that of *State ex rel. Berger* v. *Hurley*, 73 Conn. 536, none of them are building line cases. The other decisions involve the exercise of the police power in other classes of cases. One of them, *People ex rel. Kemp* v. D'Oench, 111 N. Y. 359, 361, involved a statute of the legislature regulating the height of dwelling houses and houses used as dwellings for more than one family, thereafter to be erected in the City of New York. The exact question in that case was whether hotel buildings fell within the provision of the statute. The statute was held to be a proper police regulation, as applied to the City of New York, where such regulation was necessary in the judgment of the legislature to protect the lives and conduce to the health of the occupants of such houses in a thickly populated city, but that such statute did not and was not intended to apply to a hotel building. In the Connecticut case the relator sought mandamus requiring the building commissioners to issue to her a permit to build in front of or beyond a building line, which had existed for ten years or more with the acquiescence of all parties. It will appear from that case that the statute provided for some proceeding to be had beforehand establishing such building line, and the contention of relator was that that proceeding was defective and void. The conclusion of the court was, under the circumstances, that relator's right to a permit was open to grave doubt, and that for this reason a peremptory writ of mandamus ought not to issue.

Sections 118 and 128, of Freund on Police Power, cited by the Virginia court, are in point only in so far as they relate to cases falling within the general police power of the state. The sections of Mr. Freund, particularly applicable to the case at bar, where the purposes of the statute and ordinance are aesthetic and not to provide for the safety, health and morals of the public in general, are sections 180 and 181. These latter sections say, in accordance with the holdings of the courts everywhere, that for mere beauty and symmetry of the streets, or for mere aesthetic purposes, having no reference to the safety, health, morals or general welfare of the community at large, the state may not under

its police power regulate or control the use by the owner of private property; that such right of regulation if exercised at all must be done under the power of eminent domain, and within constitutional limitations requiring just compensation to be paid for the taking or damaging of private property. This is the rule in Massachusetts as we understand the decisions. In *Welch* v. *Swasey, supra,* the supreme court of Massachusetts says, that although the legislature have no power to restrict the use of private property for purely aesthetic purposes, yet when they have determined that the public health or the public safety requires the limitation of the height of buildings in a city, in exercising the police power for such lawful purposes they may also consider questions of taste and beauty. Counsel in the case at bar rely on McQuillin on Municipal Ordinances, sections 32, 429, 430. In section 32, without citing any authority, Mr. McQuillin does say, that a municipality under a proper grant of power may, by ordinance, establish on certain streets building lines, and provide that a certain class or character of buildings shall be erected in certain districts. It will be found, however, we think, that no adjudged case, except the Virginia case, reversed, has ever gone so far as to hold that for mere aesthetic purposes, or beauty and symmetry of streets, the state may in the exercise of its police power alone limit the owner in the use of his private property; that if such restraint is imposed it must be done under the power of eminent domain and not in the exercise of the police power.

Mr. Dillon, in his recent fifth edition of his work on Municipal Corporations, volume 2, section 695, says: ''Of recent years, in response to a growing demand for the preservation of natural beauty and the conservation of the amenities of the neighborhood resulting from the manner in which it has been laid out and built upon, legislatures and municipalities have sought, by statute and by ordinance, to prevent the encroachment of undesirable features, unsightly erections, and obnoxious trades. This legislation, induced mainly by aesthetic considerations, has given rise to a series of novel questions affecting the legislative power of both the State and its governmental agent, the city. It has been held that, for aesthetic considerations and to promote the popular enjoy-

ment and advantages derived from the maintenance of a public park, the legislature may, by virtue of the power of eminent domain and upon making just compensation, impose restrictions upon the manner in which property abutting on the park may be improved and used. But it is apparent that restrictions founded, not upon the power of eminent domain, but upon the exercise of the police power, stand upon another basis, and several cases have laid down the rule that by virtue of the police power merely, neither the legislature, nor the city council exercising delegated power to legislate by ordinance, can impose restrictions upon the use of private property which are induced solely by aesthetic considerations, and have no other relation to the health, safety, convenience, comfort, or welfare of the city and its inhabitants. The law on this point is undergoing development, and perhaps cannot be said to be conclusively settled as to the extent of the police power.''

We think this section from Mr. Dillon contains a fair statement of the present status of the law on the subject. The question of the extent of this police power has several times been presented in what are known as the bill or sign board cases, and generally it has been held, that laws. and ordinances operating to control the height of bill or sign boards, and the distance from the street or street lines, based merely on aesthetic grounds, and having no reference to their safety, could not be sustained under the police power of the state. In *People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126, it is held that an ordinance which purports to legislate for public safety must tend in some appreciable way to that end. Unless there is a substantial connection between the assumed purpose and the end to be accomplished such ordinance is unenforceable. In *City of Rochester* v. *West,* 164 N. Y. 510, the charter of the municipality authorized an ordinance prohibiting the erection of bill boards exceeding six feet in height, except with the permission of the common council. Construing an ordinance passed in pursuance of the charter the New York court said: ''We think this statute conferred upon the common council of the city authority to regulate boards * * * * so far, at least, as such regulation was necessary to the safety and welfare of the

inhabitants of the city, or persons passing along its streets.'' This object was clearly within the police power. Neither the charter nor the ordinance prohibited the erection of sign boards or bill boards over six feet in height absolutely, but only without permission of council, and the regulation of council was limited to public safety. To the same effect is *Varney & Green* v. *Williams*, (Cal.) 21 L. R. A. (N. S.) 741. And in the leading case of *City of Passaic* v. *Paterson Bill Posting, Advertising & Sign Painting Co.*, (N. J.) 62 Atl. 267, it was distinctly decided, that ''A city ordinance requiring that sign or billboards shall be constructed not less than 10 feet from a street line is a regulation not reasonably necessary for the public safety, and cannot be justified as an exercise of the police power.'' The opinion in that case cites the leading decisions on the subject, including some of those already cited in this opinion.

Our conclusion is, that under the present status of the law, and considering the present conditions as to population existing in the cities of our state, we should not go counter to the great weight of authority and take advanced ground on the question of the police power to regulate and control the use of private property, based on mere aesthetic ground and having no reasonable reference to the safety, health, morals and general welfare of the people at large.

Whether without having made provision for condemnation or compensation for damages to the property taken or injured, and without providing for such condemnation and compensation the charter and ordinance of the City of Charleston are void as an exercise of the power of eminent domain, as already stated, we need not decide, and we leave this question open for further consideration when a case shall be presented calling for such decision.

For the foregoing reasons we are of opinion that the peremptory writ awarded on a former day of the term was properly directed.

*Peremptory writ awarded.*