583 S.E.2d 449

RETAIL DESIGNS, INC., Plaintiff
Below, Appellee,

v.

WEST VIRGINIA DIVISION OF
HIGHWAYS, Defendant
Below, Appellant,

One–Gateway Associates, LLC, A Limited
Liability Company; Wal–Mart Stores,
Inc., a Corporation; Nicholas Loan &
Mortgage, Inc., A Corporation; Goody's
Family Clothing, Inc., A Tennessee Cor-
poration; The Cato Corporation, a Cor-
poration, Defendants Below, Appellees,

and

One–Gateway Associates, LLC, Third–
Party Plaintiff Below, Appellee,

v.

Center Designs, Inc., A Georgia Corpora-
tion, Now Known in West Virginia as
CD Liquidating Company, Inc.; William
A. Abruzzino, Individually and Rebecca
A. Abruzzino, Individually and as Offi-
cers, Directors or General Partners,
Third–Party Defendants Below, Appel-
lees.

and

Retail Designs, Inc., Plaintiff
Below, Appellee,

v.

West Virginia Division of Highways,
Defendant Below, Appellee,

One–Gateway Associates, LLC, A Limited
Liability Company; Wal–Mart Stores,
Inc., A Corporation; Nicholas Loan &
Mortgage, Inc., a Corporation; Goody's
Family Clothing, Inc., A Tennessee Cor-
poration; the Cato Corporation, a Cor-
poration, Defendants Below, Appellants,

and

One–Gateway Associates, LLC, Third–
Party Plaintiff Below, Appellant,

v.

Center Designs, Inc., A Georgia Corpora-
tion, Now Known in West Virginia as
CD Liquidating Company, Inc.; William
A. Abruzzino, Individually and Rebecca
A. Abruzzino, Individually and as Offi-
cers, Directors or General Partners,
Third–Party Defendants Below, Appel-
lees.

Nos. 30679, 30680.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 14, 2003.

Decided April 15, 2003.

**496**

Anthony G. Halkias, Director, Jeff J. Miller, West Virginia Department of Transportation, Division of Highways, Charleston, Attorneys for the Appellant West Virginia Division of Highways.

James W. Lane, Jr., Charleston, West Virginia, Attorneys for the Appellant Wal–Mart Stores, Inc.

Daniel F. Ryan, Campbell Hornbeck, Chilcoat & Veatch LLC, Columbus Ohio, James D. Kauffelt, Kauffelt & Kauffelt, Charleston, West Virginia, Attorneys for the Appellee.

Stephen R. Crislip, Amber L. Hoback, Jackson & Kelly PLLC, Charleston, West Virginia, Attorneys for the Appellant One–Gateway Associates, LLC.

E. Scott Stanton, Summersville, West Virginia, Attorney for the Appellants Nicholas Loan and Mortgage, Inc., The Cato Corporation, and Goody's, Inc.

DAVIS, Justice:

The West Virginia Division of Highways and several other private businesses appeal an order of the Circuit Court of Nicholas County granting a permanent injunction to close an access road into the One–Gateway shopping center, located in Summersville, West Virginia, on the grounds that it was constructed for a private purpose and that it caused a servitude upon the land of an adjoining shopping center, owned by Retail Designs, Incorporated, by virtue of increased traffic traversing the Retail Designs' parking lot. We find that, pursuant to W. Va.Code § 17–4–47(a) (1963) (Repl. Vol. 2000), the opening of the access road was for a public purpose. We further find that their was no evidence presented to establish a servitude upon the Retail Designs' property. Consequently, the circuit court's order is reversed and the injunction is dissolved.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case involves an access road opened on a right-of-way wholly owned by the West Virginia Division of Highways, a defendant below and an appellant herein (hereinafter "the DOH"), and located between two competing commercial properties in Summersville, Nicholas County, West Virginia.

Retail Designs, Incorporated, plaintiff below and appellee herein (hereinafter "Retail Designs"), is the owner of Merchants Walk Shopping Center (hereinafter "Merchants Walk"), a strip mall located along U.S. Rt. 19 in Summersville. Merchants Walk has direct access to West Webster Road, a road which boarders Merchants Walk to the south. West Webster Road also intersects with U.S. Rt. 19; but, there is no traffic light at the intersection. Near the northern edge of Merchants Walk is an at-grade intersection designated "Professional Park Drive," which serves as the access between Merchants Walk and Rt. 19. The Rt. 19/Professional Park Drive intersection is controlled by a traffic light. Sometime after Merchants Walk was developed, a shopping center owned and operated by One–Gateway Associates, LLC, a defendant below and an appellant herein (hereinafter "One–Gateway"), was developed on adjacent land located to the north of Merchants Walk, just across Professional Park Drive. The One–Gateway shopping center has twelve tenants including Wal–Mart Stores, Inc., Nicholas Loan & Mortgage, Inc., Goody's Family Clothing, Inc., and Cato Corporation, defendants below and appellants herein.

In January 1998, One–Gateway and the DOH entered into a contract under which One–Gateway developed, at its own expense,

a frontage road parallel to Rt. 19 along the One–Gateway property and then transferred the property to the DOH.[1] In exchange for the frontage road, the DOH agreed to provide for both a northern and a southern access from Rt. 19 into the One–Gateway development. The northern access has been designated as "Industrial Park Drive" and provides primary access to the One–Gateway property. The southern access, which is in dispute, utilizes the existing Professional Park Drive intersection. In its effort to connect the frontage road to Professional Park Drive thereby providing One–Gateway with a southern entrance, the DOH first attempted to obtain a public right-of-way approximately 100 feet long across a small parcel of land owned by Retail Designs and located between the One–Gateway frontage road and the Professional Park Drive intersection with Rt. 19. The DOH's attempt to purchase the right-of-way from Retail Designs failed and the DOH initiated a condemnation proceeding to acquire the parcel of land. On March 8, 1999, the Circuit Court of Nicholas County found that condemnation was improper as the DOH sought the property for private rather than public use. As a consequence, One–Gateway sought, and was granted by the DOH, a permit to construct an entrance-only access from the Professional Park Drive intersection with Rt. 19 to the One–Gateway frontage road utilizing a right-of-way wholly owned by the DOH.[2]

After the access road was constructed, on March 18, 1999, Retail Designs filed a complaint for injunctive relief seeking its closure. The complaint named the DOH as the sole defendant. After several hearings, the Circuit Court of Nicholas County ultimately granted Retail Designs' request for injunctive relief and, by order entered on December 20, 1999, ordered the DOH to permanently close the access road by July 1, 2000.

The DOH's subsequent petition for appeal in this court was denied. The circuit court extended the closure date to August 2, 2000, on which date the access road was closed.

Thereafter, One–Gateway sought a writ of prohibition from this Court arguing that it should have been included as a necessary party in the aforementioned injunction proceedings. This Court agreed and granted the writ on December 8, 2000, at which time the access road was reopened. Retail Designs then refiled its complaint naming both the DOH and One–Gateway as defendants. Thereafter, Wal–Mart Stores, Inc., Nicholas Loan & Mortgage, Inc., Goody's Family Clothing, Inc., and Cato Corporation, all tenants of One–Gateway, intervened to oppose the closing of the access road. Preliminary injunctive relief was denied to Retail Designs. However, by order entered November 8, 2001, the circuit court granted a permanent injunction closing the access road, but stayed the effect of the order for four months to allow for an appeal. Subsequently, on March 22, 2002, the DOH filed in this Court a petition appealing the circuit court's November 8 order. On the same day, One–Gateway, Wal–Mart Stores, Inc., Nicholas Loan & Mortgage, Inc., Goody's Family Clothing, Inc., and Cato Corporation (hereinafter collectively referred to as "One–Gateway and its merchants") filed a separate appeal of the same order. We granted both petitions and then consolidated the two cases for our review. In addition, this Court granted a motion for stay pending appeal. Consequently, the access road has remained opened.

## II.

### STANDARD OF REVIEW

■ The circuit court's decision in this matter is reviewed by this Court for an abuse of discretion:

fications to the facility, such as frontage roads, with or without fully controlled interchanges. WVDOH has already spent in excess of one million dollars on preliminary environmental studies related to this upgrade, and the Division has further obligated in excess of $700,000 for preliminary engineering work.

2. Because the condemnation proceeding failed, there was not room for two-way access.

---

1. In its brief, the DOH explains that

U.S. Route 19, as it passes through Summersville, is a highly traveled facility with several at-grade intersections serving numerous commercially developed properties on both the east and west sides of the road. Current traffic projections by WVDOH indicate that these at-grade intersections will not be adequate to serve the anticipated traffic volumes on U.S. 19 within five to six years without some modi-

" 'Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.' Syl. pt. 11, *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956)." Syl. Pt. 1, *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995).

Syl. pt. 1, *Baisden v. West Virginia Secondary Sch. Activities Comm'n*, 211 W.Va. 725, 568 S.E.2d 32 (2002).

## III.

## DISCUSSION

### A. *Propriety of Injunction*

Before reaching the substantive issues raised in this appeal, we first pause to address whether the underlying claim is appropriate for injunctive relief. In this case Retail Designs filed a civil action claiming that an access road opened by the DOH amounted to a constructive servitude upon Retail Designs property and thus constituted a taking of its property. Retail Designs sought an injunction to prevent the DOH from keeping the access road open.

On appeal, the DOH argues that this is not a proper case for the use of an injunction. The DOH cites *Watson v. Fairmont & Suburban Railway Co.*, 49 W.Va. 528, 39 S.E. 193 (1901), for the proposition that injunction does not lie where there is alleged a constructive taking, as opposed to an actual taking, unless the injury to the private property at issue virtually destroys its value. Because there as been no actual taking of property owned by Retail Designs, Retail Designs has stipulated that it has not suffered any economic damage from the alleged constructive taking of its property, and the circuit court made no finding that the Retail Designs

property no longer has value, the DOH reasons that relief in the form of injunction may not lie. We find that the DOH's reliance on *Watson* is misplaced. The plaintiff in *Watson* sought an injunction to prevent the construction and operation of a street railway that was authorized by an ordinance passed by the city council. He claimed that the railway would greatly reduce the width of the street and would, thereby, destroy free right of access to and from his property adjoining the street. The plaintiff sought to enjoin the construction of the railway until the damage to his real estate could be ascertained and he received just compensation. The circuit court held:

> Such adjoining lot owner cannot restrain the construction of the railway in the street upon which his property abuts until the damage to his property, resulting from such use of the street, is ascertained and paid or secured, unless the injury to his property is so great as to destroy its value and therefore amounts to a virtual taking of the property for the use of the railway company. Section 9 of Article III of the Constitution provides that compensation shall be paid to the owner of the property for such damages and gives him an action at law therefor, but does not, as in cases where the property is actually taken, require the compensation to be paid or secured before the injury is inflicted; and, having an adequate remedy at law for the injury, the owner of such lot can have no relief in a court of equity on account thereof, if the legislature has authorized the construction and operation of the railway in such street.

Syl. pt. 5, *Watson.*

Plainly, *Watson* is not instructive to the case at hand. The *Watson* plaintiff sought an injunction to restrain the construction of a railway that was authorized by law until such time as he received compensation for his damages that would result from the taking. Here, on the other hand, Retail Designs challenges the lawfulness of the DOH's alleged taking of its property, asserting that the taking is for a private, rather than a public, purpose.[3] We find our holding in *Lovett v.*

---

**3.** Retail Designs relies upon the case of *State ex*  *rel Phoenix Ins. Co. v. Ritchie*, 154 W.Va. 306,

*West Virginia Central Gas Co.*, 65 W.Va. 739, 65 S.E. 196 (1909), to be analogous to the situation presented here.

■ In Syllabus point 3 of *Lovett*, this Court held that "[a]n injunction lies to prevent the taking of one's private domain, for uses of the public, contrary to the constitutional mandate, regardless of any question of damages." Unlike the instant case, however, in *Lovett* it was not disputed that the taking of the plaintiff's property was for a public purpose, namely the laying of gas lines. Nevertheless, the taking of the plaintiff's land did not conform with the law because the gas company condemned and compensated the plaintiff for a certain tract of his land, and then proceeded to lay its line on an alternate route using parts of the plaintiff's land that had not been condemned. Because this taking did not conform with the law, the circuit court granted an injunction.

■ As in *Lovett*, Retail Designs' challenge to the alleged taking of its property is based upon a claim that the taking did not conform to the law, because it was for a private purpose. Consequently, Retail Designs may seek remedy in the form of injunction. *See* Syl. pt. 2, *Monarch Chem. Works, Inc. v. City of Omaha*, 203 Neb. 33, 277 N.W.2d 423 (1979) (Affirming lower court's grant of an injunction where taking challenged on grounds of private purpose, and holding "[i]njunction is a proper form of remedy in which to present the question of unlawful or improper exercise of the power of eminent domain and proof of the attempt to so deprive a private citizen of an estate in his property makes the resulting damage irreparable and the legal remedy inadequate."). *See, e.g., Stout v. City of Durham*, 121 N.C.App. 716, 468 S.E.2d 254 (1996) (raising, in form of injunction, claim of improper taking for private rather than public purpose).

Having determined that it was proper for Retail Designs to seek injunctive relief for the type of claim it raised, we now decide

whether Retail Designs was entitled to that relief.

### B. Public Purpose

Pursuant to Article III, Section 9, of the West Virginia Constitution, "[p]rivate property shall not be taken or damaged *for public use*, without just compensation ...." (Emphasis added). *See also* Amendment V, Constitution of the United States ("nor shall private property be taken for *public use*, without just compensation." (emphasis added)). In the case *sub judice*, the circuit court concluded that property owned by Retail Designs was taken for a private rather than a public purpose. We disagree.

■ Pursuant to W. Va.Code § 17–4–47(a) (1963) (Repl.Vol.2000),

Access to and from state highways from and to real property used or to be used for commercial, industrial or mercantile purposes ... *is a matter of public concern* and shall be regulated by the state road commissioner to achieve the following purposes:

(1) To provide for maximum safety of persons traveling upon, entering or leaving state highways;

(2) To provide for efficient and rapid movement of traffic upon state highways;

(3) To permit proper maintenance, repair and drainage of state highways; and

(4) To facilitate appropriate public use of state highways.

(Emphasis added). The language of this statute is plain in announcing that access between a state highway and commercial property is a matter of public concern. " 'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syl. pt. 4, *Syncor Int'l Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001). Furthermore, by using the term "shall," the statue goes on to require the DOH to regulate such

175 S.E.2d 428 (1970), to support its response that an injunction is the proper remedy. However, *Phoenix* involved a petition for writ of mandamus to compel the State Road Commissioner to institute eminent domain proceedings in order to

compensate the petitioners for flood damage to their properties allegedly caused by the nearby construction of a highway. *Phoenix* did not involve an injunction and in no way supports Retail Designs' argument.

access to achieve certain enumerated purposes. "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982). Among the purposes the DOH is required to achieve by virtue of its regulation of access between state highways and commercial properties are the provision of (1) *"maximum safety* of persons traveling upon, entering or leaving state highways," and (2) "efficient and rapid movement of traffic upon state highways." W. Va.Code § 17–4–47(a) (emphasis added). Based upon the foregoing, we hold that under W. Va.Code § 17–4–47(a) (1963) (Repl. Vol.2000), the West Virginia Division of Highways is acting for a public purpose when it authorizes an access road between a state highway and real property used or to be used for a commercial, industrial or mercantile purpose in furtherance of the policies expressly set out in that section, namely to (1) provide for maximum safety of persons traveling upon, entering or leaving state highways; (2) provide for efficient and rapid movement of traffic upon state highways; (3) permit proper maintenance, repair and drainage of state highways; or (4) facilitate appropriate public use of state highways.

■ The evidence presented to the circuit court revealed that the Industrial Park Drive entrance to the One–Gateway shopping center already has an accident rate more than three times higher than the Professional Park Drive entrance. Obviously, then, closing the Professional Park Drive entrance to the One–Gateway shopping center would shift traffic from the intersection with a lower accident rate to one with a higher accident rate. Several experts testified that closing the Professional Park Drive access to the One–Gateway shopping center would likely increase the number of accidents occurring at Industrial Park Drive. In fact, the circuit court expressly found that "[t]he traffic engineering experts who testified all indicated that two entrances to a shopping center are preferable to one, and more safe than one." It stands to reason, therefore, that the maximum safety of persons traveling upon state highways is served by leaving the access from Professional Park Drive open. In addition, the DOH notes that all the traffic experts, those testifying for the plaintiff and those testifying for the defendants, opined that the current traffic design, with the access road open, works well for the area and creates a continuous and smooth flowing pattern of traffic from Rt. 19 into the One–Gateway shopping center. Indeed, the circuit court directed the DOH to perform a traffic study of the impact of closing the access road in question. According to the DOH, the study revealed that traffic delays in the area would increase, albeit slightly, if the access road in question was closed. Clearly then, the access road allows for more efficient and rapid movement of traffic.

According to the plainly expressed terms of W. Va.Code § 17–4–47(a), the DOH's action in opening the access to the One–Gateway shopping center was for a public use. Moreover, the foregoing evidence makes clear that the DOH was not only acting within its authority, but was exercising a mandatory duty when it authorized the opening of the one way access into the One–Gateway shopping center from Professional Park Drive. Consequently, we find the circuit court clearly abused its discretion in finding that the access road did not serve a public purpose.[4]

### C. Servitude

■ The circuit court concluded that the DOH placed an increased burden, or servitude, upon the Retail Design property creat-

---

**4.** Retail Designs notes that the circuit court's first order in this civil action, which was rendered on December 20, 1999, when the only parties to this action were Retail Designs and the DOH, concluded that the DOH was acting for a private purpose. Consequently, Retail Designs argues that the ruling bars further consideration of the DOH's motive on grounds of *res judicata* and collateral estoppel. This argument is without merit. One–Gateway filed a petition for writ of prohibition seeking to prevent enforcement of the December 20, 1999, order because One–Gateway had not been named a party to the law suit. This Court granted the petition and prohibited enforcement of the order. *See State ex rel. One–Gateway v. Johnson*, 208 W.Va. 731, 542 S.E.2d 894 (2000).

ed by vehicles traveling across Retail Designs' property to enter the access road leading to the One–Gateway property. In this regard, the circuit court stated

> [t]here is an increased burden of traffic on the [Retail Designs] property due to the southern access to One–Gateway's property; and the congested traffic and the traffic pattern may cause a decrease in traffic trying to get into [Retail Designs'] property by virtue of the configuration of the [access road between the One–Gateway shopping center and Professional Park Drive].

In addition, the circuit court explained that it "base[d] the finding of servitude ... on the summaries of the videotapes and the videotapes that were introduced into evidence."

■ Under our law, a governmental entity may not substantially interfere with a property owner's use and enjoyment of his or her land without compensating the owner for the interference:

> Wherefore anything done by a state or its delegated agent, as a municipality, which substantially interferes with the beneficial use of land, depriving the owner of lawful dominion over it or any part of it, and not within the general police power of the state, is the taking or damaging of private property without compensation inhibited by the Constitution.

Syllabus point 2, *Fruth v. Board of Affairs,* 75 W.Va. 456, 84 S.E. 105 (1915), *overruled on other grounds by Farley v. Graney,* 146 W.Va. 22, 119 S.E.2d 833 (1960). *See also* Syl. pt. 6, *Stover v. Milam,* 210 W.Va. 336, 557 S.E.2d 390 (2001) (Per Curiam) (same). Having reviewed the evidence relied upon by the circuit court, however, we disagree that it adequately demonstrates that the DOH inflicted a burden on Retail Designs' property. It is undisputed that the videotapes referred to by the circuit court were generated after the opening of the access road in question. Without information regarding the level of traffic that existed prior to the opening of the access road for comparison, the videotapes

are utterly useless to show an increased burden.

Assuming arguendo that the opening of the access road did result in increased traffic on Retail Designs property from individuals traveling from West Webster Road, the issue we must address is whether the DOH has made reasonable efforts to prevent the traffic. In this regard, the circuit court found that "[t]he efforts of the DOH to prevent a burden on [Retail Designs'] property have been ineffectual, and the Court makes this finding from the videotapes from July 1999 to January 2001; and the same burdens that existed then still exist today, although to a lesser degree." We disagree with the circuit court's conclusions. The evidence established that the DOH has installed traffic attenuators and signing making the turning movements from the Retail Designs property to the access road illegal. Due to its reasonable efforts to eliminate any excess traffic, the DOH may not be held to be imposing a servitude on Retail Designs' property. *Cf* Syl. pt. 1, *Herold v. Hughes,* 141 W.Va. 182, 90 S.E.2d 451 (1955) ("A grant of an easement for public highway purposes embraces every reasonable method of travel, communication of intelligence, and transportation of property, including the method of transportation of natural gas by pipe lines constructed and maintained on or under the land over which the easement is created."); Syl. pt. 2, *Lowther v. Bridgeman,* 57 W.Va. 306, 50 S.E. 410 (1905) ("A reasonable use of a public highway for the purpose of placing poles and wires for a telephone for public use, under legislative authority, is not an additional servitude upon the fee of the abutting landowner in such highway."). To the extent that drivers choose to ignore the traffic barriers and proceed illegally, Retail Designs' remedy is to notify law enforcement officials. Given the complete absence of evidence supporting the existence of an increased burden on Retail Designs' property, the circuit court plainly abused its discretion in finding a servitude.[5]

---

5. One–Gateway and its merchants have raised an additional argument asserting that Judge Johnson should have disqualified himself from this case. By administrative order entered December

26, 2000, this Court directed Judge Johnson to continue to preside over this case. Consequently, this issue is moot.

## IV.

### CONCLUSION

Because the DOH's authorization of the access road connecting the One–Gateway shopping center to Professional Park Drive was for a public purpose, and because there has been no servitude placed upon the property of Retail Designs by the DOH, the circuit court erred in granting the requested injunction. Consequently, the order of the circuit court is reversed and the injunction is dissolved.

Reversed.