672 S.E.2d 311
**Steven T. LOWE, Petitioner Below, Appellee**
v.
**Joseph CICCHIRILLO, Commissioner of the West Virginia Division of Motor Vehicles, Respondent Below, Appellant.**
**No. 33731.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 3, 2008.
Decided Nov. 7, 2008.
Dissenting Opinion of Justice Starcher Dec. 30, 2008.

Jerald E. Jones, Esq., West & Jones, Beckley, for Appellee.

Darrell V. McGraw, Jr., Esq., Attorney General, Janet E. James, Esq., Assistant Attorney General, Charleston, for Appellant.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Harrison County entered on March 9, 2007. In that order, the circuit court reversed the revocation of the driver's license of the appellee and petitioner below, Steven Lowe, by the appellant, Joseph Cicchirillo, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter, the "DMV"). The DMV now appeals the reversal of the revocation of the appellee's driver's license. Based upon the parties' briefs and arguments in this proceeding, as well as the pertinent authorities, the circuit court's March 9, 2007, order is reversed, and this case is remanded with directions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On December 10, 2005, the appellee was involved in a two vehicle accident on Turkey Run Road (Old Route 50), near Salem, West Virginia. Deputy Shaun Fleming and Deputy Greg Scolapio of the Harrison County Sheriff's Department were dispatched to the scene of the incident. Deputy Scolapio, who was the first officer to arrive at the scene, found the appellee seated in an emergency vehicle and ready to be transported to the United Hospital Center (hereinafter, "UHC") to be treated for the injuries he had sustained in the accident, including a broken ankle, which would later require surgery, and other less severe injuries.

While speaking with the appellee before he was transported to the UHC, Deputy Scolapio detected the smell of an alcoholic beverage, and observed that the appellee had bloodshot and glassy eyes, slurred speech, and was unsteady on his feet. Deputy Fleming did not speak with the appellee that night; however, on January 24, 2006, nearly six weeks after the date of the incident, Deputy Fleming met with the appellee at his home to take his statement and further investigate the matter. During the course of this meeting, Deputy Fleming obtained signed testimony from the appellee, in which he, among other things, admitted to consuming alcoholic beverages prior to driving on the night of the incident.

On January 27, 2006, Deputy Fleming obtained a search warrant which permitted him to obtain the appellee's medical records from UHC from the night of the incident. Upon review, these medical records were found to contain information regarding the appellee's blood alcohol content, as well as evidence of other controlled substances present in his blood on the night of the incident. The medical records also showed that the appellee had a blood alcohol content of 0.33 when the samples were obtained and tested, which occurred within two hours of the time of the accident.

After completing his review of the appellee's medical records, Deputy Fleming filed a criminal complaint with the Harrison County Magistrate Court. Shortly thereafter, a warrant was issued for the appellee's arrest for the crime of driving under the influence. On January 31, 2006, Deputy Fleming filed a Statement of Arresting Officer report with the results of appellee's blood test attached thereto. The appellee received this report on February 2, 2006. On February 7, 2006, following a review of Deputy Fleming's report, the DMV issued an initial order of revocation, thereby, revoking the appellee's privilege to drive in West Virginia for a period of six months. Upon receiving his notification of the revocation, the appellee requested a DMV administrative hearing. Then, on October 13, 2006, following the administrative hearing, the DMV issued a final order of revocation which officially revoked the appellee's driver's license for a period of six months.

Soon thereafter, the appellee appealed the revocation of his driver's license to the circuit court, arguing that the DMV's conclusion that he was driving improperly at the time of the accident was completely contradictory to all presented evidence. Moreover, the appel-

lee argued that the DMV had not properly considered the ankle injury that he sustained in the accident as reason for Deputy Scolapio's initial observation that the appellee had appeared unsteady on his feet following the incident which, he argued, was one of the significant factors contributing to his being charged with driving under the influence.

On March 9, 2007, the Circuit Court of Harrison County reversed the DMV's final order of revocation and reinstated the appellee's driving privileges. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the DMV is appealing an order of the Circuit Court of Harrison County reversing its revocation of the appellee's driver's license. This Court applies the same standard of review that the circuit court applied to the DMV's administrative decision, i.e., giving deference to the DMV's purely factual determinations and giving *de novo* review to legal determinations. *See Choma v. West Virginia Div. of Motor Vehicles,* 210 W.Va. 256, 258, 557 S.E.2d 310, 312 (2001). In Syllabus Point 2 of *Choma,* we held that: "On appeal of an administrative [decision] . . . findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong. Syllabus Point 2 (in part), *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996)." Likewise, "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syllabus Point 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.,* 191 W.Va. 134, 443 S.E.2d 602 (1994).

Moreover, as this Court explained in *Modi v. West Virginia Bd. of Medicine,* 195 W.Va. 230, 239, 465 S.E.2d 230, 239 (1995),

findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference.

. . . Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

(citations omitted); *see also Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (explaining that "[w]e must uphold any of the [administrative agency's] factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts"). In addition, " '[t]he "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.' Syllabus Point 3, *In re Queen,* 196 W.Va. 442, 473 S.E.2d 483 (1996)." Syllabus Point 2, *Webb v. West Virginia Bd. of Medicine,* 212 W.Va. 149, 569 S.E.2d 225 (2002). Thus, "[t]he scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the hearing examiner." *Martin,* 195 W.Va. at 304, 465 S.E.2d at 406.

With these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

The DMV argues that the circuit court incorrectly reversed the revocation of the appellee's driver's license. More specifically, the DMV contends that the circuit court mistakenly determined that the DMV should not have admitted into evidence at the administrative hearing the report of the appellee's blood alcohol content. The DMV states that this was error by the circuit court given the fact that even the appellee did not contest the accuracy of the evidence of the appellee's blood alcohol content on the night of the accident.

Conversely, the appellee states that he does not contend that the blood test administered at UHC is not admissible *per se,* but argues that it was improper in this case. He points out that there was no certificate that

the record submitted by Deputy Fleming was the actual record, and the submitted record was not obtained by subpoena duces tecum. He further explains that there was no person authorized by statute to draw blood who testified at the hearing, nor was there any chemist or technician who testified as to how the blood was tested or as to the actual test results. He states that the DMV relied on *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 454 S.E.2d 77 (1994), but that case "certainly does not allow a police officer to show up with one sheet of paper purportedly obtained through a search warrant and have it admitted as a fact, that the test was properly administered."

In reviewing the underlying facts, it is undisputed that during an interview by Deputy Fleming on January 24, 2006, the appellee admitted that he was driving the vehicle on the night of the accident, and that he had been drinking prior to driving that vehicle. Moreover, in a signed statement obtained that same day, the appellant also admitted to passing a vehicle in his lane of traffic stating that he "passed that vehicle then I saw headlights in front of me and then I don't remember anything after that." It was after the appellant's admission of drinking and driving on the date of the incident that Deputy Fleming obtained a search warrant for a copy of the appellee's blood test from UHC. Those results showed that the appellee's blood was drawn at 9:54 p.m., while the crash occurred approximately one hour earlier, at 8:48 p.m. Deputy Fleming attached the results of the blood test to the Statement of Arresting Officer, and submitted it to the DMV.

Given the specific facts of this case, we believe that the hospital record was a part of the DMV's records and therefore was properly admitted in the record at the outset of the hearing. It was attached to the Statement of Arresting Officer and submitted to the DMV as a part of the officer's report. Pursuant to W.Va.Code § 29A–5–2(b),

All evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and

no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

Moreover, as we held in *Crouch v. West Virginia Div. of Motor Vehicles*, 219 W.Va. 70, 76, 631 S.E.2d 628, 634 (2006), admission of this type of information is mandatory on behalf of the agency. We explained:

Without a doubt, the Legislature enacted W.Va.Code § 29A–5–2(b) with the intent that it would operate to place into evidence in an administrative hearing "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself ...." W. Va.Code § 29A–5–2(b). Indeed, admission of the type of materials identified in the statute is mandatory, as evidenced by the use of the language "shall be offered and made a part of the record in the case ...." *Id.* This Court has long recognized the mandatory meaning attached to the word "shall." " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " *Retail Designs, Inc. v. West Virginia Div. of Highways*, 213 W.Va. 494, 500, 583 S.E.2d 449, 455 (2003) (quoting Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982)).

219 W.Va. at 76, 631 S.E.2d at 634.

In this case, the circuit court did not discuss *Crouch* in its order reversing the DMV. Nonetheless, *Crouch* also explained that,

Although W. Va.Code § 29A–5–2(a) has made the rules of evidence applicable to DMV proceedings generally, W. Va.Code § 29A–5–2(b) has carved out an exception to that general rule in order to permit the admission of certain types of evidence in administrative hearings that may or may not be admissible under the Rules of Evidence. Moreover, inasmuch as we view W. Va.Code § 29A–5–2(a) as a statute pertaining to the application of the Rules of Evidence to administrative proceedings

generally, while W. Va.Code § 29A–5–2(b) specifically addresses the admission of particular types of evidence, W. Va.Code § 29A–5–2(b) would be the governing provision.

Moreover, as we noted in *Crouch*,

> We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.

219 W.Va. at 76, n. 12, 631 S.E.2d at 634, n. 12. As such, with regard to the case at hand, there was no evidence offered by the appellee to undermine the authenticity of the blood test results once they were admitted during the administrative hearing. To the extent that the appellee failed to rebut the accuracy of the blood test results in any way, the DMV properly gave them weight. In further support of the DMV's reliance on the blood test results, *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 36, 454 S.E.2d 77, 81 (1994), provided:

> The blood tests in the present case were ordered by the medical personnel attending to the Petitioner subsequent to the accident. Such tests are not subject to exclusion based upon lack of conformity to the administrative requirements of West Virginia Code § 17C–5–4, and the hospital records evidencing the blood results are not subject to exclusion based upon any regulatory scheme for the handling of hospital records. We conclude that medical records containing the results of blood alcohol tests ordered by medical personnel for diagnostic purposes are subject to subpoena and shall not be deemed inadmissible by virtue of the provisions of West Virginia Code § 57–5–4d.

In consideration of all of the above, the DMV was required to admit the blood test results into the record at the administrative hearing pursuant to W.Va.Code § 29A–5–2(b). Without any challenge to their accuracy, the DMV properly considered the test results, along with the testimony by Deputy Fleming regarding the smell of an alcoholic beverage on the appellee, his observations that he had bloodshot and glassy eyes, slurred speech, and the fact that he was unsteady on his feet, in its decision to revoke the appellee's driver's license. Thus, it is clear to us that even without the blood test results, there remained a preponderance of the evidence to uphold the revocation of the appellee's license.

Next, the DMV argues that the circuit court's finding that the DMV erred in concluding that the appellee was driving improperly, given the fact that the testimony of the arresting officer was that he never observed the appellee driving, "is curious and in error inasmuch as the only issue in that regard is whether there was a reasonable suspicion for the officers to investigate." The DMV states that the finding in its final order that the appellee was driving improperly was clearly attributed to the appellee's admission to passing a vehicle before the accident. The appellee did not respond to this issue in his brief before this Court.

In reviewing the record below, we recognize that it is undisputed that neither officer saw the appellee driving a vehicle on the night in question. We believe that it is equally clear that a reasonable suspicion for investigation arose from the accident based upon the surrounding circumstances. As such, it was upon interviewing the appellee several weeks later by Deputy Fleming that the appellee admitted in a signed statement that he had been drinking and driving on the night in question. Likewise, when this testimony was presented during the hearing, it was not refuted in any way by the appellee.

As this Court has previously discussed, it is not necessary that an arresting officer observe a driver operating a motor vehicle if the surrounding circumstances indicate that he was the driver of the vehicle. In Syllabus Point 2 of *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997), we held:

> 'Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the

evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.' Syllabus Point 2, *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984).

Likewise, in Syllabus Point 3 of *Carte,* we explained:

> W.Va.Code § 17C–5A–1a(a)(1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

In *Carte,* the driver was found passed out behind the steering wheel of a car which was sitting in an access driveway to a shopping center. The car was at a stoplight with the engine running. The police officer never saw the car move, however, the circumstances satisfied the requirement that the arresting officer establish by a preponderance of the evidence that the driver was operating a motor vehicle in this State while under the influence of alcohol. *Carte,* 200 W.Va. at 167, 488 S.E.2d at 442.

In the case at hand, we have the appellee's own written statement that he had consumed alcohol on the night in question and that he was operating the vehicle at the time of the accident. We also have the statement of an investigating officer that after the accident, he witnessed the smell of alcohol on the appellee, that the appellee had bloodshot and glassy eyes, slurred speech, and was unsteady on his feet. Therefore, we conclude that the circuit court erred in reversing the DMV's final order on this basis.

■ In its final argument, the DMV contends that the circuit court erred in finding that it failed to consider and give substantial weight to the criminal case history submitted by the appellee at the administrative hearing, in particular, the fact that the appellee was acquitted of the DUI charge in a separate proceeding. The DMV maintains that it issued its final order based upon the evidence adduced at the hearing and that the circuit court erred in finding that the acquittal should be dispositive of the administrative license revocation. It points out that pursuant to *Choma v. W.Va. Division of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001), the acquittal must be considered if entered into evidence at the administrative hearing, but it is not dispositive.

The appellee maintains that the DMV stated that it could not give any consideration to the acquittal of the appellee at the criminal trial because he did not put on any evidence as to why there was a directed verdict of acquittal at the criminal trial. He states that while the DMV cited *Choma* in support of its ruling, that *Choma* does not stand for such a proposition. He further contends that *Choma* says that the DMV must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the DMV, when evidence of such result is presented in the administrative proceeding. Thus, the appellee contends that the circuit court properly reversed the administrative order.

Upon reviewing the final order in its entirety, we believe that it shows that the DMV did consider the criminal proceedings and gave appropriate weight to the evidence as presented. The DMV properly found that this evidence did not outweigh other evidence in the record, and correctly found that there was sufficient evidence to show that the appellee was driving under the influence on December 10, 2005, justifying the six-month revocation of his driver's license.

■ Under Syllabus Point 2 of *Carte, supra,* to sustain a revocation based upon driving under the influence of alcohol, the State must show, by a preponderance of the evidence, that a driver operated a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and consumed alcoholic beverages. It is clear to us that such a showing was made in this case. Accordingly, we believe that the circuit court erred in reversing the DMV's revocation of the appellee's license. In Syllabus Point 4 of *In re Queen,* 196 W.Va. 442, 473 S.E.2d 483 (1996), we held that: " 'Substantial evidence' requires more than a mere scintilla. It is

such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If an administrative agency's factual finding is supported by substantial evidence, it is conclusive."

In summary, we find that there was substantial evidence for the revocation of the appellee's driver's license and conclude that the DMV's findings were not clearly wrong in light of all of the probative and reliable evidence in the record, including the presentation of evidence surrounding the underlying criminal charge as dictated by *Choma, supra.* We therefore, reverse the circuit court's decision.

## IV.

### CONCLUSION

Based upon the foregoing, we hereby reverse the Circuit Court of Harrison County's March 9, 2007, reversal of the DMV's revocation of the appellee's driver's license. We further remand the matter to the Circuit Court of Harrison County for the immediate entry of an order reinstating the DMV's administrative decision revoking the appellee's driver's license.

Reversed and remanded with directions.

STARCHER, J., dissents and files dissenting opinion.

ALBRIGHT, J., did not participate in the issuance of this opinion.

STARCHER, J., dissenting:

(Filed December 30, 2008)

I dissent because the majority opinion ignores our holding in *Choma v. West Virginia Div. of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001), where we stated at Syllabus Point 3:

In administrative proceedings under *W.Va.Code,* 17C-5A-1 *et seq.,* the commissioner of motor vehicles must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the commissioner, when evidence of such results is presented in the administrative proceeding.

Both the DMV and the majority opinion ignored this Court's clear holding in *Choma,*

and failed to give "substantial weight" to the appellee's acquittal on DUI charges. By sidestepping the clear holding of *Choma* to engineer the result in the instant case, the majority encourages the DMV to hold our cases in contempt.

I also question the use of the results of the appellee's blood test before the DMV. I recognize that a test of a suspect's blood alcohol level might be compelling evidence of whether the suspect was intoxicated or not. But in this case, there is nothing in the record showing that the blood test (a) was authenticated as actually being the appellee's; (b) was accurately taken, processed and recorded; or (c) was interpreted by an expert as showing that the appellee was intoxicated. Instead, the only evidence we have of the blood test's reliability is the majority's determination that it was stapled to the "Statement of Arresting Officer" by Deputy Fleming—and the majority opinion goes on to conclude that the blood test was "part of the DMV's records and therefore was properly admitted in the record at the outset of the hearing." As a teetotaler, I certainly know that drunk drivers are a menace on our highways and I do not approve of drinking and driving. But that doesn't allow this Court to throw to the wind rules of evidence dedicated to allowing only reliable, authenticated evidence to be considered.

I therefore respectfully dissent.