# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Steven O. Dale, Acting Commissioner of the
West Virginia Department of Motor Vehicles,
Petitioner Below, Petitioner**

**FILED**

November 21, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-1327** (Kanawha County 13-AA-79)

**Teresa E. Haynes,
Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven O. Dale, the Acting Commissioner of the West Virginia Department of Motor Vehicles (the "Commissioner"), by counsel Elaine L. Skorich, appeals the order of the Circuit Court of Kanawha County, entered November 18, 2013, that affirmed the Final Order of the Office of Administrative Hearings (OAH). The OAH rescinded the Commissioner's revocation of Respondent Teresa E. Haynes's driver's license for driving under the influence of alcohol ("DUI") on the ground that the Commissioner failed to establish an articulable reasonable suspicion to initiate the traffic stop of respondent's car and, therefore, failed to show that the investigating officer had reason to encounter and then arrest respondent for DUI. Respondent does not make an appearance.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 30, 2011, Officer Hosby-Brown of the Ranson Police Department in Jefferson County stopped respondent allegedly because she was weaving as she drove and had twice ridden on the white line. Officer Hosby-Brown then summoned Officer Mathew Custer ("the investigating officer") to the scene. Once at the scene, the investigating officer conducted a series of field sobriety tests which respondent failed and then arrested respondent for DUI.

On August 26, 2011, the DMV revoked respondent's driving privileges for DUI for a period of one year.[1] On August 30, 2011, respondent timely requested an administrative hearing to challenge the results of her preliminary breath test and the constitutionality of the traffic stop.

---

[1] Respondent had a previous DUI conviction on June 16, 2010. She regained her driving privileges from that conviction before the arrest at issue in this appeal.

1

At the January 19, 2012, administrative hearing before the OAH, the Commissioner presented the testimony of the investigating officer who stated as follows: He was summoned to the scene by Officer Hosby-Brown after Officer Hosby-Brown stopped respondent. He smelled alcohol on respondent's breath. Respondent admitted that she had four or five drinks that evening. Her eyes were bloodshot and glassy and her speech was slurred. When the investigating officer asked for respondent's driver's license, she said it was in her purse in the car's trunk. When respondent was ordered to retrieve her license from the trunk, she turned the car on and fumbled with the knobs on the dashboard. She then exited the car, but was unsteady while standing and walking to the rear of her car. She consented to, but failed, two field sobriety tests: the horizontal gaze nystagmus test and the walk-and-turn test. She refused to perform the one-leg-stand test. Her preliminary breath test registered .15%.

Also at the administrative hearing, the Commissioner presented the Incident Report and the DUI Information Sheet, both of which were completed by the investigating officer. The incident report provided the following:

> On July 30. 2011[, respondent's] vehicle was observed to be weaving in its lane and the passenger side tires struck the white fog line on two separate occasions. At 0123[,] a traffic stop was made on said vehicle[.] I asked driver . . . for her driver[']s license[,] vehicle registration[,] and proof of insurance. . . .

As for the DUI Information Sheet, the following boxes were checked under the heading "Vehicle In Motion[:]" "weaving" and "tires on the line marker." Respondent objected to the documents on the ground that neither document mentioned that respondent was stopped by Officer Hosby-Brown and, therefore, both documents wrongfully gave the impression that the investigating officer stopped respondent's car. Despite the objection, the hearing officer admitted both documents into evidence.

Officer Hosby-Brown did not attend the administrative hearing and, therefore, offered no testimony regarding the reason for the stop. Respondent also did not testify at the administrative hearing.

By Final Order entered May 28, 2013, the OAH rescinded the Commissioner's revocation of respondent driver's license. The OAH concluded that the investigating officer's testimony at the administrative hearing was directly contradicted by the information contained within the DUI Information Sheet and the Incident Report. Specifically, the OAH found that

> [n]either of the afore-mentioned (sic) documents . . . indicates that the traffic stop was effectuated by another law enforcement officer. Rather, the [i]nvestigating [o]fficer implied, by his omission of this pertinent fact, and [by] affixing his signature to both documents, that the traffic stop was initiated by the [i]nvestigating [o]fficer.

The OAH then concluded that the Commissioner had failed to present evidence sufficient to allow it to make the findings required by West Virginia Code § 17C-5A-2(f).[2] That section provides as follows:

> In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol . . . the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol . . . ; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . . : Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol . . . ; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five of this chapter.

On June 27, 2013, the Commissioner filed a petition for judicial review with the circuit court wherein the Commissioner argued that (1) the OAH was clearly wrong in concluding that the Commissioner had presented insufficient evidence to determine whether respondent was operating a motor vehicle in this state while under the influence of alcohol; and (2) the OAH erred in applying the criminal exclusionary rule to this administrative license revocation proceeding.[3]

By order entered November 18, 2013, the circuit court found that the OAH did not err in rescinding the Commissioner's revocation order. The circuit court noted that, pursuant to West Virginia Code § 17C-5A-2(f) (2012), it was required to determine whether the person was lawfully placed under arrest for DUI.[4] The circuit court acknowledged that the Incident Report

---

[2] In his brief, the Commissioner cites to West Virginia Code § 17C-5A-2(f) (2010) which was the statute in effect at the time of the stop. However, in the order on appeal, the circuit court cites to West Virginia Code § 17C-5A-2(f) (2012). However, it is a distinction without a difference in that subsection (f) is identical in both the 2010 and 2012 versions.

[3] *See* Syl. Pt. 3*, Miller v. Toler*, 229 W.Va. 302, 729 S.E.2d 137 (2012); Syl. Pt. 7, *Miller v. Smith*, 229 W.Va. 478, 729 S.E.2d 800 (2012).

[4] The 2004 version of West Virginia Code § 17C-5A-2(f) required a specific finding as to whether the driver was lawfully placed under arrest for DUI. *See* W.Va. Code § 17C-5A-2(f) (2004). However, a 2008 amendment removed that requirement. *See* W.Va. Code § 17C-5A-2(f) (2008). In 2010, the Legislature amended the statute and, once again, required a finding as to whether the driver was lawfully placed under arrest for DUI. *See* W.Va. Code § 17C-5A-2(f) (2010). The statute was amended most recently in 2012. That amendment added two new sections (§ 17C-5C-4a and -4b) which are not at issue here. *See* W.Va. Code § 17C-5A-2(f) (2012). Therefore, like the 2004 version, the 2010 and 2012 versions of West Virginia Code § 17C-5A-2(f) require the OAH to make a finding regarding "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled

and the DUI Information Sheet were "properly admitted into evidence at the administrative hearing and [were] admissible under [West Virginia Code §] 29A-5-2(b)." The circuit court also noted that, pursuant to *Crouch v. West Virginia Division of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006), the admission of those documents created a rebuttable presumption as to their accuracy. *Id.* at 76 n.12, 631 S.E.2d at 634 n.12. However, the circuit court found that respondent's counsel "rebutted the accuracy of [the Commissioner's] evidence by illustrating [the investigating officer's] inconsistent statements regarding what he observed and his role in the arrest." Therefore, the circuit court found that it could not determine whether respondent was lawfully placed under arrest for DUI. With regard to the Commissioner's claim that the OAH applied the exclusionary rule, the circuit court found that the OAH did not apply the exclusionary rule, but— instead—simply found that the Commissioner failed to produce the evidence required by West Virginia Code § 17C-5A-2(f).

The Commissioner now appeals the circuit court's order. This Court explained the standard of review in such appeals in Syllabus Point 1 of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), in which we said that

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in [West Virginia] Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

This Court has also held that

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983). Thus, although deference is given to the administrative agency's factual findings, this Court applies a de novo standard of review to the agency's conclusions of law.

---

substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test."

4

On appeal, the Commissioner first argues that the circuit court was clearly wrong in finding that the Incident Report and the DUI Information Sheet contradicted the investigating officer's testimony and indicated that he saw respondent driving her car. The Commissioner claims that nowhere in the Incident Report or the DUI Information Sheet does the investigating officer say he saw respondent driving her car.

The Commissioner is correct when he says that "nowhere in the DUI Information Sheet or the Incident Report does the investigating officer say he saw respondent driving her car." However, it is just as true that nowhere in the Incident Report or the DUI Information Sheet does the investigating officer admit that Officer Hosby-Brown conducted the stop of respondent's car. In fact, the information in the Incident Report and the DUI Information Sheet was so oblique that the assistant attorney general assigned to the case did not learn that the investigating officer did not conduct the stop until the attorney was examining the investigating officer at respondent's administrative hearing. As such, we find that the circuit court did not err in determining that the DUI Information Sheet and the Incident Report were contradictory to the investigating officer's testimony at the administrative hearing.

The Commissioner's second assignment of error is that the circuit court erred in finding that an arrest cannot be lawful absent a valid traffic stop. This Court has said that an arrest following a traffic stop can only be "lawful" if an officer has an "articulable reasonable suspicion to initiate a traffic stop" of the person's vehicle.[5] *See Syl. Pt. 4, Clower v. W.Va. Div. of Motor Vehicles*, 223 W.Va. 535, 544, 678 S.E.2d 41, 50 (2009) ("'Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]' Syllabus Point 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).") In *Clower*, this Court applied West Virginia Code § 17C-5A-2(f) (2004) which includes the same requirements as § 17C-5A-2(f) (2012), which the circuit court applied in this case.

Further, West Virginia Code § 17C-5A-2(f)(1) (2010), the statute in effect at the time of the stop of respondent's car, requires a finding as to "[w]hether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol. . . ." In the instant case, given that the investigating officer did not see respondent driving her car, and given that the Commissioner did not call Officer Hosby-Brown as a witness at the administrative hearing in this matter, the finding required by West Virginia Code § 17C-5A-2(f)(1) (2010) could not be made. Further, the finding required by West Virginia Code § 17C-5A-2(f)(2) (2010), "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol," could also not be made. Therefore, on the record before the OAH, we cannot say that the circuit court erred in finding that the

---

[5] The relevant part of the 2012 statute tracks the language of the 2004 statute: "[W]hether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test." W.Va. Code § 17C-5A-2(e) (2004); W.Va. Code § 17C-5A-2(f) (2012).

Commissioner failed to present sufficient evidence to evince a valid and lawful traffic stop or arrest.[6]

The Commissioner next argues that, pursuant to *Lowe v. Cicchirillo*, 223 W.Va. 175, 672 S.E.2d 311 (2008), it was not necessary for the investigating officer to see respondent driving her vehicle for her arrest to be lawful. Syllabus Point 5 of *Lowe* provides that,

> "[West Virginia] Code § 17C–5A–1a(a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person." Syllabus Point 3, *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997).

223 W.Va. at 177, 672 S.E.2d at 313. We disagree with the Commissioner's claim that *Lowe* and *Carte* are applicable to the instant case because there was no traffic stop at issue in either case. In *Carte*, law enforcement officers first saw the driver suspected of DUI parked at a stop light. 200 W.Va. at 163-64, 488 S.E.2d 438-39. In *Lowe*, law enforcement officers first saw the driver suspected of DUI in an ambulance following a vehicular accident in which the driver was involved. 223 W.Va. at 178, 672 S.E.2d 314. However, in the instant case, the key issue is the sufficiency of the evidence regarding respondent's traffic stop. Hence, *Lowe* and *Carte* are clearly distinguishable.

The Commissioner next claims that, where the answer to the question posed by West Virginia Code § 17C-5A-2(f)(2) ("whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol") is "No," the only impact is that the OAH cannot consider the results of a secondary breath test conducted pursuant to West Virginia Code § 17C-5-4(b) (2010). Therefore, the Commissioner asserts that the circuit court erred in reversing his revocation of respondent's driver's license.

Subsequent to the Commissioner's filing of his appellate brief in this case, we addressed and rejected this assignment of error in *Dale v. Ciccone*, 233 W.Va. 652, 760 S.E.2d 466 (2014), as follows:

> The DMV also contends that the "lawful arrest" language is only intended to address matters involving a secondary chemical test. As the circuit court correctly found, there is no merit to this argument, and it is contrary to the clear language of [West Virginia Code § 17C-5A-2. That] statute sets forth findings which must be made with regard to the lawful arrest of the individual for driving under the influence, distinct from any secondary chemical test issue.

---

[6] *But see Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014) (per curiam) (reinstating the Commissioner's revocation order in similar circumstances on the ground that the documentary evidence in the case included the information that the traffic stop was made by a different officer than the one who arrested the driver.)

233 W.Va. at __ n.8, 760 S.E.2d at 473 n.8.

The Commissioner's final assignment of error is that the circuit court erred in applying the exclusionary rule to the evidence showing that respondent was DUI on the night of her arrest. Our review of the record on appeal shows that the circuit court did not apply the exclusionary rule to that evidence. Instead, the circuit court found that the Commissioner's failure to present sufficient evidence precluded it from making the findings required by West Virginia Code § 17C-5A-2(f), which—in turn—precluded the admission of evidence showing that respondent was DUI. As such, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman

**DISSENTING:**

Justice Menis E. Ketchum

**DISSENTING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II


LOUGHRY, Justice:

In this memorandum decision, the majority of the Court rubberstamps a decision of the OAH that is both contrary to the evidence of record and contradicted by our existing case law.

There is undisputed evidence in the administrative record to support a finding that the stop of the respondent's vehicle was lawful. The DUI Information Sheet, which was properly admitted into evidence at the OAH hearing, indicates that the respondent's vehicle was "weaving" and the "tires [were] on the line marker." *See* Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006) (holding that statement of arresting officer is admissible in administrative driver's license revocation hearing). This evidence is also reflected in a typed statement prepared by the arresting officer: "[t]he vehicle was observed to be weaving in its lane and the passenger side tires struck the white fog line on two separate occasions." Unquestionably, swerving and driving on the fog line provide a police officer with an articulable reasonable suspicion to make a lawful traffic stop. *See* Syl. Pt. 1, *State v. Stuart*,

7

192 W.Va. 428, 452 S.E.2d 886 (1994) (holding that officers may stop vehicle to investigate if they have articulable reasonable suspicion that person in vehicle is committing crime).

Furthermore, there is a rebuttable presumption as to the accuracy of the information in the DUI Information Sheet. *Crouch*, 219 W.Va. at 76 n.12, 631 S.E.2d at 634 n.12; *Dale v. Odum*, 233 W.Va. 601, __, 760 S.E.2d 415, 423 (2014). In this case, the respondent utterly failed to rebut that presumption. Indeed, the respondent, who did not testify at the OAH hearing, did not present any evidence whatsoever regarding the manner in which she was driving prior to her traffic stop. In *Odum*, a case with nearly identical facts, we upheld a license revocation based upon the unrebutted evidence of a lawful stop set forth in a DUI Information Sheet, even though the police officer who personally observed the erratic driving did not testify at the administrative hearing. *Id.*, 233 W.Va. at __, 760 S.E.2d at 422-23.

When rejecting this admissible documentary evidence, the OAH found that it was contradicted by the arresting officer's testimony. This finding was clearly wrong. In fact, nowhere in the DUI Information Sheet or in the officer's typed report did the arresting officer ever indicate that he personally observed the respondent's erratic driving. Simply put, there was no contradiction. When a hearing examiner's finding of fact is clearly wrong, it is not to be accorded deference on appeal. Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996); *accord* W.Va. Code § 29A-5-4(g) (1998) (specifying grounds for reversing decision of administrative agency, including when findings are clearly wrong).

There is overwhelming evidence that the respondent was driving while under the influence of alcohol. In addition to her erratic driving, she admitted consuming four or five drinks; she smelled of alcohol; her eyes were bloodshot and glassy; her speech was slurred; she was unsteady upon exiting her vehicle; she had difficulty opening the trunk of her own car; she failed two field sobriety tests and refused a third; and she failed the preliminary breath test. The Commissioner's revocation order should have been affirmed.

The purpose of an administrative driver's license revocation is to promote public safety and to save lives. *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 97, 502 S.E.2d 190, 194 (1998); *accord* West Virginia Code § 17C-5A-2(e) (2010) ("The principal question at the [administrative driver's license revocation] hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol[.]"). Because that purpose was thwarted in this case, I respectfully dissent.