IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0438

_____

FILED

**April 3, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, COMMISSIONER OF THE WEST VIRGINIA
DIVISION OF MOTOR VEHICLES,
Petitioner below, Petitioner,

v.

RAYMOND BURCKER,
Respondent below, Respondent.

_____

AND

_____

No. 21-0686

_____

EVERETT FRAZIER, COMMISSIONER OF THE WEST VIRGINIA
DIVISION OF MOTOR VEHICLES,
Petitioner below, Petitioner,

v.

AARON POWERS,
Respondent below, Respondent.

_____

Appeals from the Circuit Court of Kanawha County
The Honorable Jennifer F. Bailey, Judge
Civil Action Nos. 19-AA-75 and 19-AA-122

AFFIRMED
_____

Submitted: January 11, 2023
Filed:  April 3, 2023

Patrick Morrisey, Esq.                          Raymond Burcker
Attorney General                                Charles Town, West Virginia
Elaine L. Skorich, Esq.                         Self-Represented Respondent
Assistant Attorney General
Charleston, West Virginia                       B. Craig Manford, Esq,
Counsel for Petitioner                          Martinsburg, West Virginia
                                                Counsel for Respondent Powers

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to file a dissenting opinion.

**SYLLABUS OF THE COURT**

1.      "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

2. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3. "The determination of whether a circuit court applied the proper legal standard is a question of law we review *de novo*." Syl. Pt. 1, *Hubbard v. State Farm Indemnity Co.*, 213 W. Va. 542, 584 S.E.2d 176 (2003).

.

**HUTCHISON, Justice:**

West Virginia Code of State Rules § 64-10-8, entitled *Blood Analysis; Standards and Methods*, sets forth—as its title suggests—the standards and methods the West Virginia Bureau of Public Health has established to ensure the accuracy of blood tests administered to determine the amount of ethyl alcohol in a person's blood. *See id*. § 64-10-8.1 ("Methods of analyzing blood specimens for ethyl alcohol shall meet the following standards[.]"). In *Frazier v. Corley*, No. 18-1033, 2020 WL 1493971, at *5 (W. Va. Mar. 26, 2020) (memorandum decision), *pet'n for rehearing refused* (June 16, 2020), this Court unanimously concluded that absent evidence that a diagnostic blood test complied with the requirements of West Virginia Code of State Rules § 64-10-8, the Office of Administrative Hearings (OAH) was justified in discounting the accuracy of any blood test results for the purposes of an aggravated DUI enhancement.

In the two cases now before us,[1] the Commissioner basically asks us to overrule *Corley.* Because the Commissioner presents us with no legitimate reasons for doing so, we decline the Commissioner's request and reaffirm that in the absence of evidence that a diagnostic blood test complied with the requirements of West Virginia Code of State Rules § 64-10-8, the OAH is justified in discounting the accuracy of any blood test

---

[1]We have consolidated these two cases as they both present the same legal issue.

1

results for the purposes of an aggravated DUI enhancement. Therefore, we affirm the judgments of the circuit court.

## I.    Facts and Procedural Background[2]

### A. *Facts in No. 21-0438*

On February 23, 2012, Raymond Burcker was driving a car involved in a three-vehicle traffic accident. While the police officer investigating the accident (the Investigating Officer) found that Mr. Burcker did not contribute to causing the accident, the Investigating Officer nevertheless suspected Mr. Burcker may have been under the influence of alcohol while driving based upon observations related to the Investigating Officer by the emergency medical personnel and by hospital staff.[3]

---

[2]The appendix records in these cases contain the entire administrative records from the OAH. We remind counsel and parties appearing in this Court of West Virginia Rule of Appellate Procedure 6(b), which provides:

> Parties on appeal are discouraged from including the entire record of the case in the lower tribunal in an appendix record or a designated record. The record on appeal should be selectively abridged by the parties in order to permit the Intermediate Court or the Supreme Court to easily refer to relevant parts of the record and to save the parties the expense of reproducing the entire record.

[3]No field sobriety tests were conducted due to a head injury Mr. Burcker suffered in the accident.

At the hospital, Mr. Burcker was given a diagnostic blood test.[4] Afterwards, the Investigating Officer obtained a search warrant for Mr. Burcker's medical records. The medical records showed Mr. Burcker's blood alcohol concentration was .23 g/dL of serum. Applying the formula set out in West Virginia Code of State Rules § 64-10-8.2(d) (2005), a blood alcohol concentration of .23g/dL translates into a blood alcohol level of .198%.

On March 17, 2012, the Investigating Officer spoke to Mr. Burcker, who admitted to consuming a bottle and a half of Nyquil and a Coors beer between 1 p.m. and 6 p.m. on February 12, 2012. The Commissioner revoked Mr. Burcker's driver's license for driving with a blood alcohol level of .15% or greater (or what is commonly termed aggravated DUI).[5] Mr. Burcker sought an administrative hearing before the OAH.

---

[4]A diagnostic blood test is one conducted to diagnose, evaluate, and treat a patient. Law enforcement officers are not involved in ordering a diagnostic test. Tests conducted at the direction of law enforcement officers, or forensic tests, are administered to obtain potential evidence of a crime. *See State v. Miller*, No. 21-0378, 2022 WL 856614, at *3 (W. Va. Mar. 23, 2022) (memorandum decision).

[5]Aggravated DUI carries with it enhanced penalties beyond those imposed for non-aggravated DUI. W. Va. Code § 17C-5A-2(k)(1) (2010) (version applicable to Mr. Burcker); *see also* W. Va. Code § 17C-5A-2(k)(1) (2015) (version applicable to Mr. Powers).

At the OAH administrative hearing, Mr. Burcker's counsel[6] objected to Mr. Burcker's medical records being admitted into evidence:

> [HEARING EXAMINER]: Do you object to *(unintelligible)*?
>
> [MR. BURCKER'S COUNSEL]: Yeah, particularly the medical records, Your Honor. I mean, without any foundation or any type of – I mean, they could be admitted into the file, but what consideration is given, I mean, there's zero foundation and zero medical personnel here. So, I mean, how was the sample collected? What was – was any deformity [sic] with the health regs, and all the things that would be needed to give any kind of validity and foundation to you considering blood evidence.

The Hearing Examiner admitted Mr. Burcker's medical records into evidence but concluded whatever weight they should be afforded would be determined after all the evidence was presented at the hearing.

The OAH affirmed the revocation of Mr. Burcker's license, but it rescinded the portion of the revocation for aggravated DUI.[7] The OAH concluded that since there was no evidence that the diagnostic blood test was conducted consistent with West Virginia Code of State Rules § 64-10-8, the test results could not be used to show a blood alcohol

---

[6]Mr. Burcker was represented by counsel before the OAH. He is self-represented in this Court.

[7]A non-aggravated DUI can be established either by proof that a driver had a BAC of .08% or more or proof that the driver was impaired by consumption of alcohol while driving. *Albrecht v. State*, 173 W. Va. 268, 271, 314 S.E.2d 859, 862 (1984). In the latter case, a chemical test is not required proof. *See id.*, Syl. Pt. 1.

content of .15%. or greater. The Commissioner appealed the OAH's decision to rescind Mr. Burcker's aggravated DUI to the circuit court. The circuit court affirmed the OAH finding that "[i]n the complete absence of evidence that the blood diagnostic was performed in compliance with the Code of State Rules, the OAH was justified in assigning no weight to the results for the purpose of an aggravated enhancement." The Commissioner timely appealed to this Court.

### B. *Facts in No. 21-0686*

On August 6, 2017, Aaron Powers was involved in a single vehicle accident. At the accident scene, the Investigating Officer observed that Mr. Powers' speech was "pretty much unintelligible." Mr. Powers' eyes were red and watery, and he smelled of an alcoholic beverage. There were two boxes of Bud Light brand beer in Mr. Powers' car, and several empty beer bottles were scattered about the vehicle. Field sobriety tests were not administered because, when the Investigating Officer arrived, Mr. Powers was being treated by emergency medical providers. Mr. Powers was taken to the hospital where his blood was drawn at the direction of medical personnel. The Investigating Officer obtained a search warrant for Mr. Powers' medical records. The medical records showed a blood serum concentration of .242 mg/dL which, applying the formula contained in West Virginia Code of State Rules § 64-10-8.4(d), translated to a .208% alcohol concentration in the blood. The Commissioner revoked Mr. Powers' driver's license for aggravated DUI, and Mr. Powers sought a hearing before the OAH.

At the administrative license revocation hearing, Mr. Powers' counsel objected to the admission of the blood test evidence because there was no showing that the blood testing satisfied West Virginia Code of State Rules § 64-10-8. The OAH admitted Mr. Power' medical records. While the final order stated that the OAH did "not afford the 'result' of the blood analysis any weight in deciding this matter," the OAH nevertheless considered the blood evidence as "relevant evidence that [Mr. Powers] had consumed alcoholic beverages[.]" The OAH affirmed the revocation of Mr. Powers' license but rescinded the aggravated portion of the revocation. The circuit court affirmed the OAH. The circuit court found that absent evidence that the blood was drawn according to West Virginia Code of State Rules § 64-10-8 "it was not error for the OAH to discount the accuracy of the blood diagnostic results and assign the results no weight for the purpose of an aggravated enhancement." The Commissioner timely appealed to this Court.

## II.    Standard of Review

When the Commissioner appeals from a circuit court order in an administrative license revocation case, this Court applies the same standard of review that the circuit court applied. *Ullom v. Miller*, 227 W. Va. 1, 7, 705 S.E.2d 111, 117 (2010). That standard is contained in the West Virginia Administrative Procedures Act as "[a]n administrative revocation of a driver's license is required to be appealed under the

6

provisions of the Administrative Procedures Act, W.Va. Code, 29A–5–4." *Harper v. Bechtold*, 180 W. Va. 674, 675-76, 379 S.E.2d 397, 398-99 (1989).

In Syllabus Point 2 of *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W. Va. 627, 309 S.E.2d 342 (1983), we explained:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

In applying the above standards, we expounded that we review questions of law under a *de novo* standard while factual findings are reviewed only for clear error:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

Finally, we have held that "[t]he determination of whether a circuit court applied the proper legal standard is a question of law we review *de novo*." Syl. Pt. 1, *Hubbard v. State Farm Indem. Co.*, 213 W. Va. 542, 584 S.E.2d 176 (2003). With these standards in mind, we now address the issues at hand.

### III. Discussion

The Commissioner claims that the OAH erred in refusing to give weight to diagnostic blood test results, even though the DMV did not establish that such tests met the criteria of West Virginia Code of State Rules § 64-10-8.[8] The Commissioner appears to

---

[8]At the time of the blood draws in both Mr. Burcker's and Mr. Powers' cases, West Virginia Code of State Rules § 64-8-10 (2005) provided:

> 8.1. Methods of analyzing blood specimens for ethyl alcohol shall meet the following standards:
>
> (a) The method used shall be capable of separating and quantifying ethyl alcohol from the blood specimen;
>
> (b) The method used shall be capable of the analysis of a reference sample of known alcohol concentration within accuracy and precision limits of plus or minus 0.01 grams per cent W/V of the true value. These limits shall be applied to alcohol concentrations which are 0.01 grams per cent W/V or higher;
>
> (c) The method used shall be capable of blood alcohol analysis which results in a concentration less than 0.01 grams of alcohol per one hundred milliliters of blood when alcohol free persons are tested; and

(d) The gas-chromatographic method meets the standards in this subsection for testing.

8.2. Blood for alcohol analysis shall be collected as follows:

(a) The blood shall be drawn only by a licensed doctor of medicine or osteopathy, registered professional nurse, trained medical technician or any medical professional trained in phlebotomy;

(b) Sterile hypodermic needles and syringes shall be used. Sterile disposable units are recommended;

(c) The skin shall not be disinfected with ethyl alcohol. The use of non-alcoholic antiseptics, those which do not contain ethyl alcohol, including 1-1000 aqueous solution of mercuric chloride, aqueous benzalkonium chloride (zephiran), aqueous merthiolate, or other suitable aqueous disinfectants is acceptable;

(d) The quantity of alcohol found in serum shall be divided by a factor of 1.16 to determine the quantity of alcohol in the blood; and

(e) The container (tube or vial) shall be clean and dry, and have an inert, airtight stopper.

The current version of West Virginia Code of State Rules § 64-10-8 (2022) provides:

8.1.  Methods of analyzing blood specimens for ethyl alcohol shall meet the following standards:

8.1.1. The method used shall be capable of separating and quantifying ethyl alcohol from the blood specimen;

8.1.2. The method used shall be capable of the analysis of a reference sample of known alcohol concentration within accuracy and precision limits of plus or minus 0.01 grams per cent W/V of the true value. These limits shall be applied to alcohol concentrations which are 0.01 grams per cent W/V or higher;

recognize that the OAH's and the circuit court's decisions comply with *Corley*. The

Commissioner therefore attacks *Corley* and, implicitly, seeks to have it overruled. We

reject the Commissioner's arguments and reaffirm *Corley*.

---

8.1.3. The method used shall be capable of blood alcohol analysis which results in a concentration less than 0.01 grams of alcohol per one hundred milliliters of blood when alcohol free persons are tested; and

8.1.4. The gas-chromatographic method meets the standards in this subsection for testing.

8.2. Blood for alcohol analysis shall be collected as follows:

8.2.1. The blood shall be drawn only by a licensed doctor of medicine or osteopathy, registered professional nurse, trained medical technician or any medical professional trained in phlebotomy;

8.2.2. Sterile hypodermic needles and syringes shall be used. Sterile disposable units are recommended;

8.2.3. The skin shall not be disinfected with ethyl alcohol. The use of non-alcoholic antiseptics, those which do not contain ethyl alcohol, including 1-1000 aqueous solution of mercuric chloride, aqueous benzalkonium chloride (zephiran), aqueous merthiolate, or other suitable aqueous disinfectants is acceptable;

8.2.4. The quantity of alcohol found in serum shall be divided by a factor of 1.16 to determine the quantity of alcohol in the blood; and

8.2.5. The container (tube or vial) shall be clean and dry, and have an inert, airtight stopper.

In *Corley*, Mr. Corley was driving his car and struck a tree. He was taken to the hospital where diagnostic blood and urine tests were performed. Police later obtained a search warrant for Mr. Corley's medical records which indicated that his blood serum alcohol level was .22%. The DMV revoked Mr. Corley's driver's license for aggravated DUI. At the OAH administrative license revocation hearing, one of the Investigating Officers testified to the blood serum alcohol content evidence from the medical records. Mr. Corley's counsel objected, among other reasons, because the DMV offered no evidence that a non-alcoholic disinfectant was employed to sterilize Mr. Corley's skin before his blood was drawn as required by West Virginia Code of State Rules § 64-10-8-2(c). The OAH upheld the Commissioner's revocation as a non-aggravated DUI but denied the aggravated DUI enhancement. The OAH found that the DMV did not show the blood testing met the requirements of West Virginia Code of State Rules § 64-10-8.2(c). It therefore concluded the DMV did not prove Mr. Corley's blood alcohol level was .15% or greater while driving.[9] The DMV appealed to the circuit court which affirmed. The DMV then appealed to this Court arguing that "it was not required to show that the blood test was properly administered under the Court's holding in *State ex rel. Allen v. Bedell*[, 193 W. Va. 32, 454 S.E.2d 77 (1994)]." The DMV specifically argued:

---

[9]We have stated that a chemical test is necessary to prove that a driver had a blood alcohol concentration over a statutorily prescribed amount. *See Albrecht*, 173 W. Va. at 271, 314 S.E.2d at 862 ("A chemical test is obviously necessary to establish the concentration of alcohol in a person's blood when that is the intended basis for revocation."). Thus, the only way to prove an aggravated DUI is with a chemical test. *Cf. id.* at 272 n.3, 314 S.E.2d at 864 n.3 ("Where the revocation is based on having a blood alcohol content of .10%, a chemical test is necessary to prove this fact.").

> [I]t is well settled that blood tests ordered by the medical personnel attending to the driver subsequent to the accident are not subject to exclusion based upon lack of conformity to the administrative requirements of West Virginia Code § 17C-5-4, and the hospital records evidencing the blood results are not subject to exclusion based upon any regulatory scheme for the handling of hospital records.

*Corley*, No. 18-1033, 2020 WL 1493971, at *4. We rejected the DMV's contention.

In *Corley*, we recognized that *Bedell* dealt only with the implied consent statute, W. Va. Code § 17C-5-4, which provides that law enforcement officers may order a driver to submit to a chemical test only when certain statutorily delineated requirements are met. In *Corley*, we also recognized that *Bedell* did not address the issue Mr. Corley was arguing, that the DMV's failure to prove a blood test complied with West Virginia Code of State Rules § 64-10-8 renders the blood test result unreliable and entitled to no weight. Because *Bedell* did not address this issue, we recognized that "*Bedell* is not relevant to [Mr. Corley's] challenge[,]" and "does not control our decision in this case." *Corley*, No. 18-1033, 2020 WL 1493971, at *5. Consequently, we concluded, "[i]n the absence of evidence that the blood diagnostic was performed in compliance with the Code of State Rules, the OAH was justified in discounting the accuracy of the blood diagnostic results for the purpose of an aggravated enhancement." *Corley*, No. 18-1033, 2020 WL 1493971, at *5.

12

The Commissioner in the two cases now before us reiterates the identical argument that the DMV unsuccessfully advanced in *Corley*, that *Bedell* disposes of the issue in the Commissioner's favor. This is clearly unsupportable. *Bedell* did not address the issue that was before the Court in *Corley* and which is before the Court (again) in these two consolidated cases—was the OAH justified in discounting the accuracy of diagnostic blood tests that were not shown to have been made in compliance with West Virginia Code of State Rules § 64-10-8? We find that *Corley* properly read *Bedell* as not pertinent to this issue because *Bedell* never addressed it. As such, *Bedell* is not precedent on this issue. "It is elementary that an opinion is not binding precedent on an issue it did not address." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1084 (10th Cir. 2011). "[I]t is beyond debate that '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *Ret. Plans Committee v. Jander*, 140 S. Ct. 592, 597 (2020) (per curiam) (Gorsuch, J., concurring) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). We conclude that *Corley* properly found *Bedell* was inapposite, and that *Corley* is the controlling authority for the cases now pending before us.

The Commissioner also argues that *Corley* is inconsistent with two per curiam opinions of this Court, *State v. Coleman*, 208 W. Va. 560, 542 S.E.2d 74 (2000) (per curiam), and *Lowe v. Cicchirillo*, 223 W. Va. 175, 672 S.E.2d 311 (2008) (per curiam), and that these per curiam opinions should be followed here. We disagree with the Commissioner's position. Both *Coleman* and *Lowe* relied on *Bedell*. *Coleman*, 208 W. Va.

13

at 563, 542 S.E.2d at 77; *Lowe*, 223 W. Va. at 181, 672 S.E.2d at 317. Since *Bedell* did not address the applicability of West Virginia Code of State Rules § 64-10-8 to diagnostic blood tests, *Coleman* and *Lowe's* reliance on *Bedell* is in error. Thus, we do not find *Coleman* and *Lowe* can support the Commissioner's position.[10]

Finally, the Commissioner argues the diagnostic test results are entitled to a presumption of accuracy since they were included in the administrative record before the OAH and were not rebutted. We are compelled to reject the position that diagnostic tests should be presumed accurate for forensic purposes:

> First, hospitals are not as concerned with the *quantitative* level of alcohol as they are with the *qualitative* or general range. A general estimate is considered *clinically* acceptable, whereas a specific amount is what is referred to as forensically acceptable. Second, the hospital is in the business of treating patients—not prosecuting defendants. Thus, use of a less reliable or less accurate method is also acceptable for that purpose.

Donald J. Ramsell, *25 Ill Prac, DUI Law and Practice Guide* § 6:109 (Westlaw March 2022 update) (emphasis in original).[11]

### III.   Conclusion

---

[10]We are not unmindful that in Mr. Powers' case, the OAH declined to afford any weight to the diagnostic blood test yet relied on the blood test to conclude Mr. Powers had alcohol in his system. Any error in this regard is harmless given the substantial amount of evidence of Mr. Powers' non-aggravated DUI even completely discounting the blood test.

[11]In fact, Mr. Powers' medical records specifically warned that Mr. Powers' serum ethanol "test result is for medical purposes only, not legal purposes[.]"

14

For the foregoing reasons, we affirm the judgments of the circuit court.

Affirmed.